GARFUNKEL WILD, P.C.
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2588
Facsimile: (516) 466-5964
Burton S. Weston
Afsheen A. Shah
Adam T. Berkowitz

*Proposed Counsel for the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND GUIDANCE.[1]     Chapter 11
SERVICE, INC. d/b/a FEGS,                  Case No. 15-_____ (___)

                          Debtor.
-------------------------------------------------------------x

**MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**PAYMENT OF PREPETITION WAGES, COMPENSATION, EMPLOYEE**
**BENEFITS AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND**
**DIRECTING BANKS TO HONOR CHECKS WITH RESPECT THERETO**

Federation Employment and Guidance Service, Inc. d/b/a FEGS ("**FEGS**" or the

"**Debtor**", as debtor and debtor-in-possession in this Chapter 11 case (the "**Chapter 11 Case**"),

by and through its proposed attorneys, Garfunkel Wild, P.C., hereby moves (the "**Motion**") for

entry of an Order, substantially in the form annexed hereto as Exhibit A (the "**Wage Order**"),

authorizing (i) payment of all unpaid prepetition wages and salaries, employment benefits,

expense reimbursement and other cash and non-cash compensation claims, including severance

benefits to the extent the Employees were terminated prior to the Petition Date, not to exceed

$12,475 per employee; (ii) payment of prepetition funds deducted from payroll, including

without limitation, payroll related trust taxes, tax deposits, third party providers and processing

fees; (iii) use of accrued PTO (defined below); (iv) reimbursement of employee expenses; (v)

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.

payment of employee benefits; and (vi) banks to honor any employee wage, salary and benefit checks with respect thereto, in accordance with the provisions of any post-petition financing order entered in this case. In support of this Motion, the Debtor relies upon the Affidavit of Kristin Woodlock Pursuant to Local Rule 1007-4 and in Support of First Day Motions dated as of March 17, 2015 (the "**Woodlock Affidavit**") and respectfully represents as follows:

## SUMMARY OF RELIEF REQUESTED

1.      By this Motion, the Debtor seeks authorization to honor certain prepetition and related obligations owed to its employees, earned by such individuals within one hundred and eighty (180) days before the Petition Date, including accrued prepetition wages, salaries, and other cash and non-cash compensation claims, and including severance benefits to the extent the Employees were terminated prior to the Petition Date, not to exceed $12,475 per employee.[2] The employee workforce consisting of caregivers, healthcare and administrative personnel (the "**Employees**") are the core of Debtor's remaining ongoing operations. Maintaining positive employee relations is essential to the Debtor's ongoing operations and paramount to ensuring client safety. It will also allow the Debtor to continue, without unnecessary interruption, its ongoing efforts to achieve a successful transition of its programs.

2.      The Employees are primarily responsible for and charged with ensuring continuity in the high quality of care provided to the Debtor's patients. Thus, to avoid the significant risks of resignations, overall discontent or loss of morale among essential employees, and in view of the priority awarded to wage claims under the Bankruptcy Code, it is necessary and appropriate that the Debtor be granted the requested authorization. Indeed absent an Order

---

[2] Any such payments shall be made in accordance with the provisions of any post-petition financing order entered by the Court in this Chapter 11 Case.

granting the relief requested by this Motion, the Debtor runs the risk that its continuing operations and ability to provide critical care to its clients will be compromised.

3.     Accordingly, the Debtor requests that those Employees who are part of the Debtor's ongoing operations receive their unpaid prepetition wages and continue to receive their ordinary course prepetition benefits (as further described herein) during their employment with the Debtor. The Motion also seeks the customary relief for the Debtor to pay amounts required by law for trust fund taxes, deduction and withholdings to the appropriate government agencies and benefit providers.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.     Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory predicate for the relief requested herein are sections 105(a), 363(b), 507(a)(4) and (a)(5) and 541(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**BACKGROUND**

7.     On the date hereof, (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

8.     The Debtor remains in possession of its assets and continue to manage its operations as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. A detailed description of the Debtor's business and the reasons for the filing of this Chapter 11

Case is set forth in the Woodlock Affidavit, filed simultaneously herewith and incorporated herein by reference.

9.      No trustee, examiner or committee of creditors has yet been appointed.

### THE DEBTOR'S EMPLOYEES AND RELATED OBLIGATIONS

A.      **Prepetition Wages, Salaries and Severance**

10.     The Debtor employs a total of 1902 Employees, comprised of approximately 1203 union and 699 non-union employees (collectively, the "**Employees**").  Union employees (the "**Union Employees**") consist of members of the local chapter of the Community and Social Agency Employees Union, District Council 1707 ("**Local 1707**").      Each of the Employees perform a critical function in the Debtor's operations and their skill, knowledge and expertise is vital to ensuring continuity of care for the Debtor's clients and streamlining the Debtor's transition into this Chapter 11 case.

11.     Employees are paid bi-weekly in the Debtor's ordinary course of business.  No Employee will receive more than $12,475 on account of pre-petition wages in connection with any bi-weekly payroll.

12.     The Debtor's most recent payroll period runs from February 23, 2015 through March 6, 2015 and was be paid on March 13, 2015.  The next payroll, covering the pay period from March 9, 2015 to March 20, 2015 is scheduled to be paid on March 27, 2015. Approximately 12 days of the upcoming pay period constitutes pre-petition wages and payroll related benefits (collectively, the "**Prepetition Wages**").  The Debtor's average bi-weekly gross payroll is approximately $3.6 million.

13.     Approximately 11% of the Employees are paid by check while the remaining 89% are paid by direct deposit.  Accordingly, some of the Employees who received payment of their Wages by check immediately prior to the Petition Date may not yet have presented the checks

for payment, and for those who have, some may not yet have cleared through the banking system. Thus, the Debtor requests authorization to pay the aggregate amount of accrued wages and salaries that have not yet been paid to these Employees for periods prior to the Petition Date, and authorize all applicable banks and other financial institutions at which the Debtor maintains disbursement accounts and any other bank the Debtor is authorized to do business with (the "**Banks**") to honor or send all checks or wire transfers, as the case may be, for all prepetition wages that have either already been sent on behalf of the Employees but not yet presented for payment or have yet to clear through the banking system.

14.    In addition, the Debtor also requests authority, in its sole discretion, to continue its existing severance policy and pay prepetition severance obligations (the "**Severance Obligations**") owed as of the Petition Date, and to provide any eligible Employees with a severance benefit in the event such Employee is terminated postpetition. The Debtor's existing policy provides that full and part-time Employees with two or more years continuous service and who regularly work more than ten (10) hours a week and are terminated shall be eligible for severance pay, in accordance with the schedule set forth on Exhibit B hereto. The Debtor does not believe any "insiders" will be terminated within the first twenty-days after the Petition Date, and postpetition payment of Severance Obligations will conform with section 503(c)(2) of the Bankruptcy Code. To the extent that checks, wire transfers and direct deposit transfers with respect to prepetition Severance Obligations have not cleared the Debtor's Banks, the Debtor requests that the court direct the Banks to honor such transfers, or alternatively authorize the Debtor to reissue payment in the event payment is nevertheless stopped.

15.    The Debtor believes the foregoing relief is necessary to maintain morale and stability among its Employee workforce. The Debtor's failure to remit the full amount of Pre-

Petition Wages or refuse to honor Severance Obligations would inflict substantial hardship on the Employees and damage morale during a critical time period in this Chapter 11 case. The continued commitment of the Employees is required for the Debtor to successfully navigate through the reorganization process.

B.    **Withholding and Payroll Taxes**

16.    The Debtor is required by law to withhold from the wages of its Employees, and remit to the appropriate taxing authorities, all applicable federal, state, and local income, FICA taxes, state unemployment taxes and social security and Medicare taxes and in certain instances, to pay expenses related thereto (collectively, the "**Trust Fund Taxes**"). In addition, the Debtor also makes certain deductions from Employee paychecks for certain benefit programs, insurance, disability, child support, union dues, assistance and other similar programs (the "**Deductions**", and together with the Trust Fund Taxes, the "**Withholdings**"). The Debtor transfers the Withholdings to the appropriate government agencies, and/or benefit providers in accordance with the payment schedules established by such agencies or providers. The Debtor believes that such withheld funds, to the extent that they were in the Debtor's possession as of the Petition Date and/or remain in the Debtor's possession, are not property of the Debtor's bankruptcy estate and belong to the individual Employees on whose behalf the Withholdings are retained.

17.    Accordingly, the Debtor requests that it be authorized, but not directed, to (a) transfer any Withholdings relating to the period prior to the Petition Date to the appropriate agencies, third parties and/or benefit providers in the ordinary course of business, and (b) continue to withhold Withholdings in the ordinary course of business and make required transfers to the appropriate agencies, third parties, and/or benefit providers on a going forward basis.

C.    **Employee Benefits**

(a)    *Health Benefits*

18.    In the ordinary course of its business, the Debtor provides various benefits to the Debtor's Employees (collectively, the "**Employee Benefits**"). The Employee Benefits include, but are not limited to, medical and dental insurance, vision coverage, COBRA coverage, workers' compensation, disability, and related programs. The estimated cost to the Debtor of funding the unpaid Employee Benefits that are due and payable to both union and nonunion Employees through the Petition Date is approximately $4.48 million. The failure to remit Employee Benefits would undermine employee morale and create a hardship. It is thus necessary that the Debtor be permitted to remit payments of any required amounts related to the Employee Benefits that were due as of the Petition Date, and continue providing the Employee Benefits after the Petition Date.

(b)    *Savings, Investments and Retirement Plans*

19.    403(b) Plan. The Debtor offers a 403(b) savings and investment plan (the "**Employee 403(b) Plan**") for all Employees. Voluntary employee contributions to the Employee 403(b) Plan are deducted from payroll and matched by the Debtor. The Debtor transfers/mails the contributions, along with the remaining Withholdings to the appropriate government agencies, and/or benefit providers in accordance with the payment schedules established by such agencies and/or providers.

20.    As of the Petition Date, the Debtor has not yet transferred/mailed all Withholdings, and some transfers made may be currently outstanding or may have not yet cleared through the banking system. The Debtor is requesting authorization to pay any outstanding Withholdings that accrued and were owed prior to the Petition Date. In addition, the Debtor also seeks authorization to pay all Withholdings, any related taxes, tax deposits and processing fees in the ordinary course of business on a going forward basis.

(c)    *Paid Time Off ("PTO")*

21.    <u>Vacation</u>.    One of the Debtor's PTO policies relates to vacation time.    The Debtor's vacation policy provides for the accrual of vacation time on a *pro rata* basis (*i.e.*, vacation time is accrued monthly by dividing the total number of eligible working hours in a year by 12) over the course of each year based on each Employee's initial service date (the "<u>Initial Service Date</u>"), category of employment and length of service.    Generally, the Employees are required to use their vacation time each year by the anniversary date of their Initial Service Date. To the extent vacation time is not used in the year earned, Employees are permitted to accrue and bank their unused vacation time (the "<u>Banked Time</u>") to the following year, provided however, that any Banked Time be used by the next anniversary date of the Initial Service Date.    The failure to use the Banked Time during the following year, and prior to the anniversary of an Employee's Initial Service Date, results in Banked Time being lost.    Upon termination or resignation of employment, Employees are entitled to payment of any unused vacation pay accrued through the date of termination (up to a maximum of one year).

22.    <u>Sick Time</u>.    Employees also receive certain sick benefits as part of PTO.    Full time employees are entitled to fourteen (14) paid sick days per calendar year, which are pro-rated for part time employees.    Employees are permitted to accrue up to twenty (20) days of sick time in the aggregate, but any accrued days are limited to use for catastrophic or serious illness only. No Employees are entitled to a cash payment of unused or accrued sick time at separation.

23.    <u>Personal Time</u>.    PTO also includes entitlement to certain personal time. Generally, full time earn three (3) personal days during a full calendar year, which are pro-rated for part-time employees.    No unused personal time may be accrued and banked at year end. Employees also are not entitled to payment for any accrued and unused personal days upon termination of their employment.

24.    The Debtor estimates that the aggregate amount of all PTO obligations described above as of the Petition Date is approximately $4.68 million for all Employees. The Debtor is seeking authorization to continue to allow Employees to use their accrued prepetition PTO in the ordinary course of the Debtor's business and only during the Employees' on-going postpetition employment by the Debtor, and provided that (a) each Employee will be required to use any accrued postpetition time first and, thereafter, any accrued prepetition time would be applied and (b) all requests for PTO Leave must be coordinated and approved by the applicable Employee's supervisor, consistent with past practices, so as not to disrupt ongoing operations. The Debtor is additionally seeking authority to pay any prepetition PTO obligations any employee may be entitled to upon separation, up to the amount of the Priority Cap.

(d)    *Reimbursable Expenses*

25.    In the ordinary course of business, the Debtor reimburses hourly and salaried employees for certain expenses incurred by the Employees during the course of their employment on behalf of the Debtor, such as travel and business meals, etc. As of the Petition Date, several of the Employees were owed reimbursement of such employee business expenses (collectively, "**Expenses**"). The Debtor has established business practices governing reimbursement of such Expenses.

26.    To enable the Employees to perform their jobs effectively, the Debtor must continue its existing business practices of permitting certain Employees to incur business and travel-related expenses and thereafter seek reimbursement for the Expenses by submitting appropriate invoices or vouchers evidencing the Expenses. As of the Petition Date, the Debtor owed $59,743.65 in outstanding Expenses, which includes a small number of prepetition reimbursement checks that had not been presented or will otherwise be dishonored by the

Debtor's banks. The Debtor, therefore, seeks to reimburse employees for expenses incurred by such employees in the ordinary course of business.

D.    **Bank Accounts**

27.    Prior to the Petition Date, the Debtor issued payroll, expense and medical claim checks drawn from the Debtor's payroll and other accounts. In order to give effect to the requested relief, the Debtor requests that the Court provide specific authorization and direction to all the Banks the Debtor is authorized to do business with to honor payroll checks, expense checks and medical claims, including all payroll related wire payments drawn on the Debtor's accounts, subject to the provisions of any post-petition financing order entered in connection with this Chapter 11 Case. The Debtor has sufficient funds in its accounts to enable it to pay in full the obligations owed to its employees and independent contractors for which authorization is sought herein. Accordingly, the Banks will not be prejudiced by the entry of an order directing them to honor checks or fund transfers for the payment of such amounts.

## RELIEF REQUESTED

28.    By this Motion, the Debtor seeks entry of an Order, substantially in the form of Exhibit A hereto, pursuant to sections 363 and 105(a) of the Bankruptcy Code authorizing, but not requiring, (i) payment of all unpaid Prepetition Wages (ii) payment of all Withholdings in the ordinary course; (iii) allowing use of accrued PTO in the ordinary course of business under the terms hereinabove set forth; (iv) payment of accrued vacation benefits upon separation of employment; and (v) reimbursement and payment of Employee Expenses; and (v) payment of Employee Benefits (collectively, the "**Prepetition Employee Obligations**").

29.    The Debtor seeks authorization for the payment of only those Prepetition Employee Obligations which have been earned by such individuals within one hundred and eighty days (180) before the Petition Date, as described in this Motion, and in amounts not to

exceed $12,475 per employee (the "**Priority Cap**").  To the extent the Prepetition Employee Obligations due any individual employee exceeds the Priority Cap, the Debtor is not proposing to pay, and will withhold payment of any excess.  Additionally, the Debtor requests authorization to reimburse employees for all Expenses incurred in the ordinary course of business.

30.    The Debtor further requests that all Banks be authorized to receive, process honor and pay any and all checks drawn on the Debtor's payroll and other disbursement accounts to pay the Prepetition Employee Obligations whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments and provided further, that the Banks will not honor checks: (a) for services rendered more than 180 days prior to the Petition Date, or (b) if payment of same would cause the employee to exceed the $12,475 maximum priority allowance under Bankruptcy Code section 507(a)(4).  The Debtor represents that all such checks are drawn on identifiable payroll and disbursement accounts and can be readily identified as relating directly to the authorized payment of the Prepetition Employee Obligations.  Accordingly, the Debtor believes that checks other than those relating to authorized payments will not be honored inadvertently.

**BASIS FOR RELIEF REQUESTED**

31.    Payment of the Prepetition Employee Obligations, as provided for herein, in accordance with the Debtor's discretion and ordinary course business practices, is in the best interest of the Debtor's estate, its creditors, and all parties in interest and will enable the Debtor to operate without disruptions.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority to continue the policies and programs related to the Prepetition Employee Obligations on a postpetition basis, and to pay all such obligations owed thereunder in the ordinary course of business as of the Petition Date, without regard to whether such obligations accrued before or after the Petition Date.

32.    Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a).

33.    Pursuant to section 105(a) of the Bankruptcy Code, orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors.  Accordingly, Courts frequently apply section 105(a) to authorize relief in Chapter 11 cases, similar to that sought herein where the debtor has a large workforce that is important to the preservation of its business.  See In re Chateaugay Corp., 80 B.R. 270, 287 (Bankr. S.D.N.Y. 1987) ( affirming a bankruptcy court order authorizing the debtor to pay pre-petition bankruptcy wages, salaries, employee benefits, reimbursements); see also, In re CoServ, L.L.C, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (reasoning that because debtor in possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estates" under section 105(a)); In re Gulf Air, Inc., 112 B.R.152, 154 (Bankr.W.D. La. 1989) (authorizing the debtor to pay current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims); In re Ionosphere Clubs, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (same).

34.    The purpose of section 105(a) is to "assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction."  2 Collier on Bankruptcy 105.01 (15th ed. rev. 2004); see also Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 680 (2d Cir. 2003) ("it is axiomatic that bankruptcy courts are "courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); Official Comm. of Unsecured Creditors v.

PSS S.S. Co. Inc. (In re Prudential Lines, Inc.), 928 F.2d 565, 574 (2d Cir. 1991) ("This provision has been construed liberally to enjoin [actions] that might impede the reorganization process.") quoting MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93 (2d Cir. 1988).  Thus, section 105(a) essentially codifies the bankruptcy court's inherent equitable powers.  See Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n, Inc. (In re Croton River Club, Inc.), 52 F.3d 41, 45 (2d Cir. 1995) ("Bankruptcy courts have long had broad equity power to manage the affairs of debtors, a power now codified in Section 105 of the Bankruptcy Code.") (citations omitted).

35.    A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. at 175. "Under 11 U.S.C. § 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." In re NVR L.P, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177). Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

36.    In a long line of well-established cases, federal courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport Ry., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y.

1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).

37.    Additionally, pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtor's Employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtor for contributions to Employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded unsecured priority status to the extent of $12,425 per Employee.  See 11 U.S.C. §§ 507(a)(4) and 507(a)(5).  Furthermore, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code further provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

38.    The Debtor believes that all of the Prepetition Employee Obligations constitute priority claims and are obligations that arise in the ordinary course of business postpetition, fall within the priority limits of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and therefore would be required to be paid prior to the Debtor confirming a plan of reorganization or liquidation.  Further, payment of the Employee Obligations as provided for herein, in accordance with the Debtor's discretion and ordinary course business practices, will enable the Debtor to operate without disruptions.  Payment of such amounts at this time is necessary and appropriate and in the best interests of the Debtor's estate, its creditors and all parties in interest.

39.    The Debtor's request to honor and remit Withholdings should also be approved. Such amounts principally represent a portion of Employee earnings that governments (in the case

of taxes), Employees (in the case of voluntarily withheld amounts) and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from paychecks of the Employees. The failure to pay these benefits could result in hardship to certain Employees as well as administrative problems for the Debtor. Indeed, the Debtor would expect numerous and frequent inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments that are not the Debtor's property, but, rather, have been withheld from paychecks of Employees on such other parties' behalf. Moreover, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's inability to submit such payments.

40.    Additionally, the failure to remit Witholdings may subject the Debtor and its directors and officers to federal or state liability. See City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 94-96 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); DuCharmes & Co. v. Michigan (In re DuCharmes), 852 F.2d 194, 195 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Furthermore, because such funds do not constitute property of the Debtor's estate pursuant to section 541(d) of the Bankruptcy Code, the funds are not subject to the normal bankruptcy prohibitions against payment. See Begier v. IRS, 496 U.S. 53, 67 (1990) (explaining that the debtor's payment of employee withholding for federal income and FICA taxes not a preferential transfer because withholding held in trust for taxing authority and not a part of debtor's estate); Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721-22 (4th Cir. 1998); In re Pioneer Commercial Funding Corp., 140 B.R. 951, 955 (Bankr.S.D.N.Y. 1992).

41.    Courts have routinely approved payment of pre-petition claims for compensation, benefits and expense reimbursements in other chapter 11 cases in this district. See e.g., In re Interfaith Medical Center, Inc., Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Jan. 18. 2013); In re Global Aviation Holdings Inc., et al., Case No. 12-40783 (CEC) (E.D.N.Y. Mar. 8, 2012); In re The Brown Publishing Co., et al., Case No. 10-73295 (DTE) (E.D.N.Y. May 5, 2010); In re D-A-M Liquidating Corp., Case No. 09-41966 (JBR) (Bankr. E.D.N.Y. Mar. 27, 2009); In re Caritas Health Care, Inc., Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. Feb. 10, 2009); In re Victory Memorial Hospital, et al., Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. Nov. 16, 2006); In re Brooklyn Hospital Center, Case No. 05-26990 (CEC) (Bankr. E.D.N.Y. Sept. 30, 2005).

42.    The continued and uninterrupted performance of service by the Debtor's Employees is necessary to support the Debtor's continuing operations and to maintain consistent, high-quality patient care pending a transition of the Debtor's programs and operations to alternate providers. The Debtor submits that the Employees will suffer undue hardship and, in many instances, serious financial difficulties without the relief requested herein. Additionally, any delay in paying the prepetition compensation would seriously harm the Debtor's relationship with its Employees and could irreparably impair employee morale at the very time that the continued dedication, confidence, and cooperation of the Employees is most critical. Nor can the Debtor afford to jeopardize client safety by the destabilization and potential departure of the employee workforce.

43.    Thus, to avoid the significant risks of resignations and of discontent or loss of morale among essential employees, and in view of the priority awarded to wage claims, it is necessary and appropriate that the Debtor be granted the authorization to pay outstanding Employee Obligations. The relief requested in this Motion is without prejudice to the Debtor's

right to seek to discontinue or modify any compensation and/or benefit programs during this Chapter 11 Case.

44.    In addition, it would be inequitable to require the Employees to personally bear the cost of any business expense they incurred prepetition for the benefit of the Debtor, on the expectation it would be reimbursed.    The Debtor thus submits that it is critical that it be permitted to continue its pre-petition policies of allowing its employees to incur reasonable and necessary expenses and seek reimbursement therefore by submitted appropriate request for cash disbursements and receipts evidencing such out-of-pocket expenses.

## APPLICABLE BANKS SHOULD BE AUTHORIZED TO HONOR AND PAY CHECKS ISSUED AND MAKE OTHER TRANSFERS TO PAY THE PRE-PETITION EMPLOYEE OBLIGATIONS

45.    The Debtor represents that it has sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing.    Concurrently with the filing of this motion, the Debtor has filed a motion seeking approval of a debtor-in-possession financing facility with United Jewish Appeal – Federation of Jewish Philanthropies of New York, Inc. (UJA) in an amount up to $10 million.    Also, under the Debtor's existing cash management system, the Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment made to an Employee. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests with respect to Employee Obligations that were not processed, honored or paid as of the Petition Date.

46.    The Banks will not be authorized and shall not honor checks: (a) for services rendered more than 180 days prior to the Petition Date, or (b) if payment of same would cause the employee to exceed the $12,475 maximum priority allowance under Bankruptcy Code section 507(a)(4).

47.    The Debtor also seeks authority to issue new post-petition checks, or effect new fund transfers, on account of the Employee Obligations to replace any pre-petition checks or fund transfer requests that may be dishonored or rejected. As a result of the commencement of the Debtor's Chapter 11 Case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers and direct deposit transfers on account of the Employee Obligations may be dishonored or rejected by the Disbursement Banks.

48.    Authorization to pay all amounts, under this Motion, including on account of the Employee Obligations shall not be deemed to constitute post-petition assumption or adoption of any contract, program or policy pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserve all its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts under this Motion, including on account of Employee Obligations shall not affect the Debtor's right to contest the amount or validity of any Employee Obligations, including without limitation the Withholdings.

### THE PROVISIONS OF RULE 6003 HAVE BEEN SATISFIED

49.    Bankruptcy Rule 6003 provides, in pertinent part, that:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding. . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition. . . .

Fed. R. Bankr. P. 6003(b).

50.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date to the extent that relief is "necessary to avoid immediate and irreparable harm." Id.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n. 2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

51.     Bankruptcy courts have held that irreparable harm to the bankruptcy estate exists where distractions to employees would burden the reorganization. See Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 410 (S.D.N.Y. 2007) (holding that potential distractions to employees constitutes "imminent irreparable harm" if they would impact the restructuring process); Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.), 117 B.R. 64, 67 (S.D.N.Y. 1990) (imminent and irreparable harm found where "key personnel would be distracted from participating in the reorganization process"). Further, a lapse in benefit coverage and financial hardship imposed on employees may also constitute "immediate and irreparable harm." Id; see also Commc'ns Workers of Am., District One, AFL-CIO v. NYNEX Corp., 898 F.2d 887, 891 (2d Cir. 1990) (termination of insurance coverage constitutes irreparable harm); Whelan v. Colgan, 602 F.2d 1060, 1062 (2d Cir. 1979) (same).

52.     Immediate and irreparable harm would result if the relief requested herein on an interim basis is not granted.  The Debtor expects to pay approximately $3 million on the next scheduled bi-weekly payroll date  of March 20, 2015 on account of Prepetition Employee Obligations. The Employees are one of the Debtor's most valued assets. The Employees, of course, depend upon wages and benefits to support themselves and their families.  In addition,

they are necessary to ensure the continued quality of client care to the Debtor's clients. If the Debtor does not continue to provide uninterrupted the compensation and benefits that its Employees rely on, the Employees may suffer hardship and many may seek alternative employment. Moreover, the Debtor's failure to honor certain of the Prepetition Employee Obligations during the Interim Period may put at risk the Debtor's ability to continue operating, and may impose liability on certain of the Debtor's officers for unpaid taxes. Accordingly, the Debtor submits that the relief requested to be included in the Order is essential to preserve the ongoing value of the Debtor's operations and hence will benefit the Debtor, its estate, its creditors, and all other parties in interest.

## **WAIVER OF RULE 6004 REQUIREMENTS**

53.    The Debtor's need for immediate authority to honor the Prepetition Employee Obligations also justifies elimination of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay period imposed by Bankruptcy Rule 6004(h). That rule provides that, unless a court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed until the expiration of 14 days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order takes effect. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

54.    As described above, any delay in the Debtor obtaining the relief requested herein may undermine the purpose of that relief: to maintain the value of the Debtor's estate by assuring Employees that the most important Prepetition Employee Obligations will continue uninterrupted. Accordingly, the Court should waive the 14 day stay period provided for in Bankruptcy Rule 6004(h), and order that the Debtor is immediately authorized to honor and pay the Prepetition Employee Obligations as described in this motion.

55.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtor, a waiver of the Debtor's or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to dispute such claim subsequently.

## MOTION PRACTICE

56.    This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion. Moreover, in addition to all entities otherwise entitled to receive notice, the Debtor has given notice of this motion to all entities believed to have or be claiming an interest in the subject matter of the proposed order or who, it is believed, otherwise would be affected by the proposed order. Accordingly, the Debtor submits that this motion satisfies Local Rule 9013-1.

## NOTICE

57.    As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in these Chapter 11 case. Notice of this Motion has been given to: (a) the Debtor's twenty (20) largest unsecured creditors (on a consolidated basis); (b) each of the Debtor's Prepetition Secured Creditors; (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) counsel to the Lender; and (f) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Eastern District of New York, (iv) the Attorney General of the State of New York, (v) Corporation Counsel for the City

of New York, (vi) Counsel for New York City Human Resources Administration; (vii) the New York State Department of Labor, (viii) Counsel for OPWDD, (ix) Counsel for OMH, (x) the Dormitory Authority of the State of New York; (xi) Counsel to DASNY; (xii) JPMorgan Chase Bank; (xiii) Counsel to JPMorgan Chase Bank; (xiv) Bank of America; (xv) Counsel to Bank of America; (xvi) the Internal Revenue Service, and (xvii) the New York State Department of Taxation and Finance; (collectively, the "**Notice Parties**").  The Debtor submits that no other notice need be given.

## NO PRIOR REQUEST

58.    No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order substantially in the form annexed hereto as Exhibit A granting the relief requested herein, and such other and further relief as may be just and proper.

Dated:  March 18, 2015
       Great Neck, New York

GARFUNKEL WILD, P.C.

By: _____
Burton S. Weston
Afsheen A. Shah
Adam T. Berkowitz
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
*Facsimile: (516) 466-5964*

*Proposed Attorneys for Debtor
and Debtor-in-Possession*

Exhibit A

Form of Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND GUIDANCE.[1]          Chapter 11
SERVICE, INC. d/b/a FEGS,                        Case No. 15-_____ (___)

                       Debtor.
------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION WAGES, EMPLOYEE BENEFITS AND EXPENSE REIMBURSEMENT AND (II) AUTHORIZING AND DIRECTING BANKS TO HONOR CHECKS WITH RESPECT THERETO

Upon consideration of the motion (the "**Motion**")[2] of Federation Employment and Guidance Service, Inc. d/b/a FEGS ("**FEGS**" or the "**Debtor**" as debtor and debtor-in-possession in this chapter 11 case (the "**Chapter 11 Case**"), seeking entry of an Order, pursuant to sections 363(b) and 105(a), title 11, the United States Code (as amended, the "**Bankruptcy Code**"), authorizing, but not directing, (i) payment of all unpaid prepetition wages and salaries and severance obligations; (ii) payment of funds deducted from payroll, including without limitation, payroll related trust taxes, tax deposits, third party providers and processing fees; (iii) use of accrued PTO; (iv) reimbursement of employee expenses; (v) payment of employee benefits; and (vi) banks to honor any employee wage, salary and benefit checks with respect thereto, all as described more fully in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein; the Motion being a core proceeding pursuant to 28 U.S.C. § 157(B); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and appropriate notice of the Motion having been provided under the circumstances of this case; and it appearing that no other or further notice of the Motion need be

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.
[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

provided; and a hearing on the Motion having been conducted before this Court on _____,

2015; and the Court having determined that the relief sought in the Motion is in the best interests

of the Debtor, its estate and all parties in interest; and upon the affidavit of Kristin Woodlock in

Support Pursuant to Local Rule 1007-2 and in Support of First Day Motions, dated as of the

Petition Date; and all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis to the extent provided herein.

2.    The Debtor is hereby authorized, but not directed, to pay all unpaid

Prepetition Wages and related Withholdings, subject to the maximum permitted amounts in

Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

3.    The Debtor is authorized, but not directed, to continue its existing

severance policy and pay prepetition Severance Obligations owed as of the Petition Date, and to

provide any eligible Employees with a Severance benefit in the event such Employee is

terminated postpetition.

4.    The Debtor is authorized, but not directed, to continue the programs and

policies as relate to PTO on a postpetition basis and to alter, modify, or discontinue such

programs and policies as they deem necessary or appropriate in the ordinary course of business,

without further notice to or order of the Court; provided, however, that nothing herein modifies

the Debtor's obligations under section 1113 of the Bankruptcy Code.  Notwithstanding the

foregoing, the Debtor is authorized, but not directed, to (a) to continue to honor programs and

policies as relate to PTO in the ordinary course of the Debtor's postpetition business operations

during any Employees' continued postpetition employment by the Debtor, and (b) to continue to allow Employees to use their accrued prepetition and postpetition PTO Leave in the ordinary course of the Debtor's postpetition business operations during the applicable Employees' continued postpetition employment by the Debtor, provided that: (i) each Employee will be required to use any accrued postpetition time first and, thereafter, any accrued prepetition time would be applied; and (ii) all requests for PTO Leave must be coordinated and approved by such Employees' Supervisor(s), consistent with past practices, so as not to disrupt the Debtor's business operations.  Notwithstanding the foregoing, to the extent that relief is granted in the Order authorizing the payment of any amount that is otherwise required by applicable nonbankruptcy law to be paid (*i.e.*, the payment of a trust fund tax), the Debtor shall comply with applicable nonbankruptcy law in the exercise of its discretion.

5.    The Debtor is authorized, but not directed, to reimburse employees for Expenses incurred in the ordinary course of business.    Any ordinary course Expense reimbursements shall not be considered payments to the Employee within Bankruptcy Code section 507(a)(4).

6.    The Debtor is authorized, but not directed, to continue to allocate and distribute the Withholdings in accordance with its existing policies and prepetition practices or as required by applicable federal, state and local law, without regard to whether such amounts arose before or after the Petition Date.

7.    To the extent that checks are issued to Employees or other entities in connection with the Prepetition Employee Obligations (including, but not limited to, prepetition

Wages), the Banks upon which any checks are drawn in payment thereof, either before, on, or after the Petition Date are hereby authorized to honor such checks upon presentation.

8.     All applicable Banks are authorized and directed, when requested by the Debtor, to receive, process, honor, and pay any and all checks drawn on the Debtor's accounts, payable under the terms of this Order, whether presented prior to or after the Petition Date. Such banks and financial institutions are authorized and directed to rely on the representations of the Debtor as to which checks are issued or authorized to be paid pursuant to this Order.

9.     The Debtor is authorized, but not directed, to reissue any check, electronic payment, or other transfer that was drawn in payment of any claims arising from, or related to, the Prepetition Employee Obligations that are not cleared by a depository.

10.     Any payment or transfer made or service rendered by the Debtor pursuant to this Order is not, and shall not be deemed, an admission as to the validity of the underlying obligation or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code, and nothing contained herein shall be construed as impairing the Debtor's right to contest the validity or amount of any Employee obligations, including without limitation any taxes that any be due to any taxing authority in respect of any wages or benefits for any Employee.

11.     The Debtor is authorized, but not directed, to take all actions necessary to implement the relief granted in this Order.

12.     Notwithstanding anything in this Order to the contrary, the payment of any claims pursuant to this Order and other honoring of the Prepetition Employee Obligations

shall neither (a) make such obligations administrative expenses of the estates entitled to priority status under sections 503 and 507 of the Bankruptcy Code nor (b) constitute approval by this Court of any employee plan or program, including any incentive plans, under any section of the Bankruptcy Code, including section 503(c).

13.    Nothing contained in this Order shall be deemed to be an assumption or adoption of any policy, procedure, or executory contract that may be described or referenced herein or in the Motion. The Debtor retains the discretion to not make the payments contemplated by this Order or the Motion for particular Employees and nothing in this Order will, in and of itself, constitute a promise or guarantee of any payment to any Employee.

14.    Bankruptcy Rule 6003(h) has been satisfied.

15.    The terms of this Order shall be immediately effective and enforceable upon its entry pursuant to Bankruptcy Rule 6004(h).

16.    The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

17.    Any objection to the relief requested in the Motion on a permanent basis (a) must be filed in writing with the Court, at United States Bankruptcy Court, Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York 11722 on that date that is ___ days after the entry of this interim order (the "**Objection Deadline**") and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) Office of the United States Trustee, 560 Federal Plaza, Suite 560 Long Island Fed. Courthouse Central Islip, NY 11722 (Attn: Christine Black, Esq.); (ii) proposed counsel to the Debtor, Garfunkel Wild, P. C., 111 Great Neck Road, Great Neck, NY 11021 (Attn: Burton S. Weston, Esq., Afsheen A. Shah, Esq. and Adam T. Berkowitz, Esq.); (iii) counsel to the Debtor's

prepetition secured lenders; (iv) counsel to the Debtor's post-petition lender and (v) counsel to the official committee of unsecured creditors appointed in this Chapter 11 Case.

18.    If timely objection are received, a hearing shall be held on _____, 2015 to consider such objections at the first regularly scheduled omnibus hearing in this case. This Order shall remain in effect until such hearing.

19.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Exhibit B

**Severance Policy**

The following severance pay schedule is applicable to Non-union and Union represented employees at wage rates in effect at the time of retrenchment as noted:

Full-time Employees – in the event of a retrenchment due to any of the reasons cited above, severance pay will be paid in a lump sum no later than 10 days following termination in accordance with the following severance pay schedule:

- Two years of continuous employment or less – No severance pay.
- More than two years but less than three years of continuous service – Five days
- Three years but less than four years of continuous service – Seven days
- Four years but less than five years of continuous service – Ten days
- Five years but less than six years of continuous service – Twelve days
- Six years but less than seven years of continuous service – Fifteen days
- Seven years to eight years of continuous service – Seventeen days
- Eight years to fourteen years of continuous service – Twenty days
- Fifteen or more years of continuous service – Forty-five days
- 

Part-time Employees – The severance pay schedule referenced above for full-time employees will be pro-rated for eligible part-time employees.