GARFUNKEL WILD, P.C.
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964
Burton S. Weston
Afsheen A. Shah
Adam T. Berkowitz

*Proposed Counsel for Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND GUIDANCE      Chapter 11
SERVICE INC. d/b/a FEGS,[1]                              Case No. 15-_____ (____)

                          Debtor.
------------------------------------------------------------x

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Federation Employment and Guidance Service, Inc. d/b/a FEGS ("**FEGS**" or the

"**Debtor**"), as debtor and debtor-in-possession in this Chapter 11 case (the "**Chapter 11 Case**")

by and through its proposed attorneys, Garfunkel Wild, P.C., respectfully submits this motion for

the entry of an order, substantially in the form of Exhibit A hereto, authorizing the assumption

and assignment of certain executory contracts pursuant to assumption and assignment

agreements executed prepetition and granting related relief (the "**Motion**").  In support thereof

the Debtor, by and through its proposed undersigned counsel, respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.

## I.    SUMMARY OF RELIEF SOUGHT

1.    As the extent and magnitude of the Debtor's financial crisis became clear in the months leading up to this chapter 11 case, the Debtor, and its senior leadership team, became acutely cognizant of the fact that the immediate transfer of many of its programs and facilities would be necessary and indeed critical to addressing its cash crisis while at the same time preserving continuity of care for its at-risk clients.  Under the guidance of its new management and with the assistance of its restructuring consultants, the Debtor thereafter conducted a comprehensive analysis of its existing programs and services to determine their profitability and viability going forward.  Following an intensive contract-by-contract review process and an analysis of its cash needs to continue operations, it was determined that the FEGS WeCare, Back to Work, education and youth, developmental disabilities and behavioral health programs simply could not be sustained and had to be transferred to other, more financially viable service providers.  To that end, the Debtor actively formed partnerships with various governmental and regulatory agencies, including, among others, the New York State Office of Mental Health ("**OMH**") and Office For People With Developmental Disabilities ("**OPWDD**"), and the New York City Human Resources Administration ("**HRA**"), Department of Education ("**DOE**"), and Department of Youth and Community Development ("**DYCD**") in an effort to identify, develop and implement appropriate pathways through which to transition its programs to other providers in a safe and orderly manner, so as to ensure that its existing clients will continue to receive the same high quality and level of services to which they are currently accustomed.

2.    The Debtor could not save costs by simply closing unprofitable operations or ceasing performance under money losing contracts because such actions would put its clients in jeopardy.  Accordingly, working with its government partners, it identified certain programs that

2

required more immediate transfers due to the severe financial drain they had on the Debtor's revenues and a short list of agencies with the financial wherewithal and the depth of programmatic experience to assume the program requirements was identified.

3.      After potential program assignees were identified, the Debtor entered into a series of tri-party discussions resulting in the execution of various assumption and assignment agreements (the "**Prepetition Assignment Agreements**") with agencies throughout the metropolitan area and Long Island (a list of the pending Prepetition Assignment Agreements is annexed hereto as Exhibit B)[2].  The Prepetition Assignment Agreements outline the terms pursuant to which the Debtor will assign, and the respective assignees will assume, the underlying contracts.  Certain of the programs were transferred prepetition, but the filing interrupted completion of the transfer of approximately 12 programs and contracts which must move on or prior to April 1, 2015.

4.      Accordingly, the Debtor is seeking to assume and assign the contracts related to those programs (the "**Assigned Agreements**") pursuant to both Section 365 of the Bankruptcy Code and the Prepetition Assignment Agreements.  These agreements constitute both the contractual arrangements pursuant to which the Debtor previously ran certain programs as well as certain leases relating to the real property within which these programs were run.  Under the circumstances, such assumptions and assignments unquestionably represent an exercise of the Debtor's sound business judgment and should be approved.  This will insulate the Debtor from any further related liabilities and the Assigned Agreements have no value to the estate.

---

[2] Copies fo the Prepetition Assignment Agreements will be provided to any party making a request for the same of the Debtor.

3163068v.9

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory predicates for the relief sought herein are sections 105(a) and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 6004 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 6006-1 and 9006-1 of the Local Rules of the Bankruptcy Court for the Eastern District of New York (the "**Local Rules**").

## III.    CASE BACKGROUND AND HISTORY OF DEBTOR

7.    On March 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is authorized to operate its business and/or continue to manage its property as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

8.    No trustee, examiner or creditors' committee has been appointed in this case.

9.    The Debtor, like many not-for-profit service based organizations, operates in an increasingly challenging environment.  No single, but rather a confluence of factors and events have led to FEGS' financial crisis.  A detailed description of the Debtor's business and the reasons for the filing of this Chapter 11 Case is set forth in the *Affidavit of Kristin Woodlock Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Motions*, filed simultaneously herewith and incorporated herein by reference.

10.     As noted above, after becoming aware of the financial crisis facing the Debtor, the Debtor's new management team, with the assistance of its restructuring consultants, conducted a top down analysis of the Debtor's more than 350 programs (of which approximately 74% were losing money). The Debtor was able to identify main areas of concern -- its programs for persons with developmental disabilities, its residential programs, and certain of its workforce, education and youth programs. Given the Debtor's historical concentration on top line growth without due concern to contract viability within the Debtor's existing administrative framework and business models, and its inadequate financial systems and revenue cycle management which compromised its ability to timely monitor spending and accounts receivable, the Debtor's financial performance on the workforce governmental contracts was among the worst in all its business lines. The Debtor's financial performance under those agreements was further exacerbated by a failure to adequately reserve and plan for the repayment of significant regulatory and governmental advances and contract termination costs. This led the Debtor to conclude that the FEGS' developmentally disabled, workforce, and education and youth programs required the most immediate transfers to other, more financially viable service providers.

## IV.     PROGRAMS BEING TRANSFERRED

11.     One or more problematic arrangements confronting FEGS was its Wellness, Comprehensive Assessment, Rehabilitation and Employment Programs funded by HRA ("**WeCare**"). WeCare assists clients with clearing the clinical barriers to employment. After undergoing a comprehensive assessment, participants receive individualized treatment, training, job development and job placement assistance. WeCare is a critical service for New York City to meet State and Federal welfare requirements. In fiscal year 2014, the operating loss attributed

to the WeCare program alone was approximately $11 million, inclusive of projected close out costs.

12.     Given the magnitude of the Debtor's WeCare losses, a transfer of that contract was a priority. Because of the critical nature of the service to HRA, it was essential to effect a smooth transition that resulted in uninterrupted service to clients. Thus, HRA immediately contacted Fedcap Rehabilitation Services, Inc. ("**Fedcap**"), the other WeCare vendor in New York City, and discussions ensued regarding the immediate transfer of the program, the limited program assets (purchased with WeCare funds and thus, claimed to be owned by HRA) and certain leases to Fedcap. On January 26, 2015, a Prepetition Assignment Agreement was executed providing for the transfer of the WeCare contract and subcontracts for clinical and psychiatric care to Fedcap and Fedcap's assumption of program and leasehold obligations on and after the contemplated effective date of April 1, 2015. The parties are in the process of working through the logistics of equipment conversion and space allocation as well as the hand-off of the program so as to ensure a seamless transition without interruption to the client population.

13.     This process is not as simple as merely assigning the Debtor's leases to Fedcap, as much of the space the WeCare program currently utilizes constitutes a portion of the overall leased space at 315 Hudson Street (the Debtor's Manhattan headquarters, hereinafter referred to as "**315**"). Accordingly, as part of the process the Debtor has been working closely with the landlord for 315, Fedcap and the other providers who will take over programs currently housed at 315 in order to assure that all parties get the necessary space to run their programs. WeCare utilizes space at several other of the Debtor's commercial leased properties (e.g. 2432 Grand Concourse, Bronx, NY and 350 West 51st Street, New York, NY). Fedcap has negotiated consensual arrangements for the transfer of that space.

6

14.    Similar discussions took place with the other proposed assignees, the result of which was the execution of the Prepetition Assignment Agreements which collectively effectuate the consensual transfer of more than 25 programs in the Debtor's portfolio (inclusive of WeCare contracts and subcontracts) that were losing money to new providers that will be able to provide the high level of service the Debtor's clients so dearly need. Where possible, the transition of programs was effectuated prepetition.

15.    However, for a number of reasons the Debtor was not able to transfer all of these programs prior to the commencement of this Chapter 11 case. Aside from the WeCare program contracts and subcontracts, seven (7) additional programs are slated to transfer on, or after, April 1, 2015. Accordingly, the Debtor is seeking the authority to assume the remaining Prepetition Assignment Agreements in order to assume and assign the Assigned Agreements.

16.    These remaining programs, which service the recently incarcerated, persons with HIV, at risk youth and the aging, include the following:

(a)    NNORC Hands on Huntington (a neighborhood naturally occurring retirement community) assists seniors in place with improved quality of life and continued engagement in their community. There is no ancillary space with the program. The Debtor is still in the process of finalizing an assignment agreement with respect to this program.

(b)    Housing and Supportive Services For People Living with HIV/AIDS is part of a comprehensive support program providing care, advocacy, counseling and education to the HIV population.

(c)    Link Program provides care management for recently incarcerated persons. There is no ancillary space with the program.

7

(d)     The Social Innovation Fund Project Rise Program in the Bronx, Adult Literacy Prorgam ABE/HSE, Young Adult Internship Program and Neighborhood Development Area, Bronx are education and job training and placement programs for at risk youth who age out of foster care or otherwise are disadvantaged.  These programs are all being transferred to The Door, A Center of Alternatives, Inc., a New York based not for profit, and will continue to be administered out of the Debtor's leased space at 424 East 147th Street, Bronx, NY.

(e)     Renewal Agreement for Out of School Time Programs for High School Youth provides education and job support programming to out-of-school, unemployed young adults to help young people to meet their personal, educational, and professional goals.  The program will transfer to Mosholu Montefiore Community Center, Inc.  There is no ancillary space associated with this program.

## V.     ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED AGREEMENTS AND COMPLIANCE WITH THE PREPETITION ASSIGNMENT AGREEMENTS SHOULD BE AUTHORIZED

17.     Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor".

18.     The business judgment test is the standard applied by courts to determine whether an executory contract or unexpired lease should be assumed.  See, e.g., In re Old Carco LL (f/k/a Chrysler LLC), 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures), 4 F.3d 1095, 1099 (2d Cir. 1993); Richmond Leasing Co v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten

8

the court's ability to control a case impartially"). A court should approve assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate. See, e.g., Old Carco, 406 B.R. at 196-97; In re Child World, Inc., 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992); In re Ionosphere Clubs, Inc., 100 B.R. 670, 673 (Bankr.S.D.N.Y. 1989); see also Sharon Steel Corp v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989).

19.    When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults. If there has been a default, the debtor must also provide adequate assurance of future performance under the contract. Both of these elements have been consensually satisfied pursuant to the Prepetition Assignment Agreements.[3]

20.    Assuming and assigning the Assigned Agreements pursuant to the Prepetition Assignment Agreements is an appropriate exercise of the Debtor's business judgment. The Assigned Agreements are unprofitable in the Debtor's hands and represent a cash flow drain. By assuming and assigning the Assigned Agreements to the proposed assignees, the Debtor's estate will benefit from avoiding the substantial administrative obligations that would otherwise accrue absent their assignment while at the same time ensuring continuity of care for thousands of the Debtor's clients. The WeCare contract accounted for approximately $11 million of operating losses in fiscal year 2014 while each of the remaining contracts slated for transfer also generated losses. The contracts are otherwise non-assignable licenses granted by NYC and neither the

---

[3] The Debtor's only cure obligation is with respect to the assumption and assignment of a WeCare subcontract agreement between the Debtor and Bronx Lebanon Hospital Center ("**BLHC**"), which cure amount has been agreed to by both the Debtor and BLHC.

3163068v.9

programmatic contracts nor the underlying remaining short-term real property leases present any opportunity to capture values for the estate. The sooner these contracts can be shed, the more that can be preserved by the Debtor and better clients can be assured of continuous, uninterrupted care.

21.    Accordingly, assumption and assignment of the Assigned Agreements pursuant to the Prepetition Assignment Agreements is clearly an exercise of the Debtor's sound business judgment which warrants approval by this Court.

## VI.    THE REQUIREMENTS OF RULE 6003 ARE SATISFIED

22.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For reasons discussed above, authorizing the Debtor to assume and assign the Assigned Agreements pursuant to the Prepetition Assignment Agreements is integral to the Debtor's ability sustain operations while it continues to transition its operations in this chapter 11 case.

23.    Failure to receive such authorization and other relief prior to the scheduled transfer date would completely undermine the continued viability of the programs to be transferred, put the Debtor's clients safety and welfare at risk, and cost the estate significant administrative losses which it is ill equipped to sustain at this critical juncture. Weeks ago, the Debtor was obligated to issue retrenchment notices to all of its employees notifying them that the transfer would occur on April, 1, 2015, and at that time their employment would no longer continue as of that day. As many of the employees are not being rehired by the program transferees, there is no way the Debtor can gauge the Workforce's commitment to stay beyond the April 1, 2015 target date and ensure continuity of care. These are all at risk clients and the threat of a lapse in services can be catastrophic. This is but one of the many critical reasons that

3163068v.9

the transfer must occur in a timely fashion. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## VII.    WAIVER OF RULE 6004 REQUIREMENTS

24.    The Debtor's need for immediate authority to assume and assign the Assigned Agreements is necessary to stem the mounting losses the Debtor is suffering. Accordingly, the Debtor proposes that the 14 day stay period of an order authorizing the assumption and assignment of executory contracts and unexpired leases imposed by Bankruptcy Rule 6004 should be waived. That rule provides that, unless a court orders otherwise, an order authorizing the assumption and assignment of executory contracts is stayed until the expiration of 14 days after entry of the order. Fed. R. Bankr. P. 6004. The purpose of Bankruptcy Rule 6004 is to provide sufficient time for an objecting party to appeal before the order takes effect. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

25.    As described above, the assumption and assignment of the Assigned Agreements pursuant to the Prepetition Assumption and Assignment Agreements are consensual, are a sound exercise of the Debtor's business judgment and any delay in authorizing such assignments could severely impact the Debtor's cash flow as mounting losses will continue and would put the lives of thousands of the Debtor's clients at risk. Accordingly, the likelihood of a party in interest objecting to the relief sought herein is negligible, the benefits to the estate and all stakeholders are numerous and the Court should waive the 14 day stay period provided for in Bankruptcy Rule 6004(h), and order that the Debtor is immediately authorized to assume and assign the Assigned Agreements pursuant to Section 365 of the Bankruptcy Code and the Prepetition Assignment Agreements, all as described in this motion.

11

## VIII.  NOTICE

26.    Notice of this Motion has been given to (a) the Debtor's twenty (20) largest unsecured creditors (on a consolidated basis); (b) each of the Debtor's Prepetition Secured Creditors; (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) counsel to the United Jewish Appeal Federation of Jewish Philanthropies of New York, Inc. as postpetition lender; (f) counterparties to the Prepetition Assignment Agreement and the Assigned Agreements; and (g) the following state and local taxing and regulatory authorities: (i) the Centers for Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Eastern District of New York, (iv) the Attorney General of the State of New York, (v) Corporation Counsel for the City of New York, (vi) Counsel for New York City Human Resources Administration; (vii) the New York State Department of Labor, (viii) Counsel for OPWDD, (ix) Counsel for OMH, (x) the Dormitory Authority of the State of New York; (xi) Counsel to DASNY; (xii) JPMorgan Chase Bank; (xiii) Counsel to JPMorgan Chase Bank; (xiv) Bank of America; (xv) Counsel to Bank of America; (xvi) the Internal Revenue Service, and (xvii) the New York State Department of Taxation and Finance; (collectively, the "Notice Parties"). The Debtor submits that no other notice need be given.

## IX.    NO PRIOR REQUEST

27.    No previous request for the relief sought herein has been made to this or any other court.

12

## X.    CONCLUSION

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order, attached hereto as <u>Exhibit A</u>, granting the relief requested herein, and granting the Debtor such other and further relief as is just and proper.

Dated:    March 18, 2015
         Great Neck, New York

                         GARFUNKEL WILD, P.C.

                         By: _____
                         Burton S. Weston
                         Afsheen A. Shah
                         Adam T. Berkowitz
                         111 Great Neck Road
                         Great Neck, NY  11021
                         Telephone: (516) 393-2200
                         Facsimile: (516) 466-5964

                         *Proposed Counsel for the Debtor*
                         *and Debtor-in-Possession*

3163068v.9

# EXHIBIT A

**Assumption and Assignment Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND GUIDANCE      Chapter 11
SERVICE INC. d/b/a/ FEGS,                   Case No. 15-_____ (____)

                Debtor.
------------------------------------------------------------x

## ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES)

Upon consideration of the motion (the "**Motion**")[1] of Federation Employment and

Guidance Service, Inc. d/b/a FEGS ("**FEGS**" or the "**Debtor**") as a Chapter 11 debtor and

debtor-in-possession in the above referenced Chapter 11 Case, seeking entry of an order pursuant

to sections 105(a) and 365 of title 11 of the United States Code (as amended, the "**Bankruptcy**

**Code**") authorizing the assumption and assignment of certain executory contracts pursuant to

assumption and assignment agreements executed prepetition and granting related relief, all as

described more fully in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due notice of the Motion and hearing on the Motion having been provided to the Notice Parties

and it appearing that no other or further notice of the Motion need be provided; and a hearing

having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the

Affidavit of Kristin Woodlock Pursuant to Local Rule 1007 and in Support of First Day Motions,

dated as of the Petition Date; and upon the record of the Hearing and all of the proceedings

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

before the Court; and the Court having determined that the relief sought in the Motion is in the

best interests of the Debtor, its estate and all parties in interest, and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtor has demonstrated that assuming and assigning the Assigned

Agreements and Prepetition Assignment Agreements is an exercise of its sound business

judgment, and that such assumption and assignment is in the best interests of the Debtor's estate

and clients.

B.      The non-debtor parties have consented to the Debtor's assumption and assignment

of the Assigned Agreements as proposed by the Prepetition Assignment Agreements.

C.      The Debtor has, to the extent necessary, satisfied (or will satisfy) the requirements

of Bankruptcy Code sections 365(b)(1) and 365(f)(2) in connection with the assumption and

assignment of the Assigned Agreements and the Prepetition Assignment Agreements.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      Each of the Assigned Agreements and the Prepetition Assignment Agreements is

an executory contract or unexpired lease of real property capable of being assumed and assigned

pursuant to section 365 of the Bankruptcy Code.

2.      The Debtor is hereby authorized, in accordance with Bankruptcy Code sections

105 and 365, to assume and assign the Assigned Agreements and the Prepetition Assignment

Agreements effective as of the program transfer dates set forth in the respective Prepetition

Assignment Agreements and take all such steps and execute all such documents as necessary in connection therewith.

      3.    Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

      4.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order

      5.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entirety.

Dated: Central Islip, New York
       _____, 2015

                   _____
                   HON.
                   UNITED STATES BANKRUPTCY JUDGE

3163068v.9

**EXHIBIT B**

**Schedule of Prepetition Assignment Agreements**

## CONTRACT ASSIGNMENTS

| Relevant Gov't Agency | Governmental Contract # | Program Name | Party Assigned To | Effective Date of Assignment |
|---|---|---|---|---|
| NYC DOHMH | 816 20140001981 | LINK | Center for Alternative Sentencing and Employment Services, Inc. (CASES) | 4/1/15 |
| NYC HRA | CT1 069 20131401599 | WeCARE II | FedCap Rehabilitation Services, Inc. | 4/1/15 |
| NYC HRA | N/A | FEGS/People Care Agreement | FedCap Rehabilitation Services, Inc. | 4/1/15 |
| NYC HRA | N/A | FEGS/Bronx Leb WCII Subcontract | FedCap Rehabilitation Services, Inc. | 4/1/15 |
| NYC HRA | N/A | FEGS/FEGS ProCare WCII Subcontract | FedCap Rehabilitation Services, Inc. | 4/1/15 |
| NYS OFA | C100018 | NNORC Hands on Huntington | The Suffolk Y Jewish Community Center | 4/1/15 |
| NYS DOH | C028032 | Housing and Supportive Housing Services for People Living with HIV/AIDS | Options for Community Living, Inc. | 4/1/15 |
| NYC HRA | N/A | WEP Internship Agreements | FedCap Rehabilitation Services, Inc. | 4/1/15 |
| NYC DYCD | 90307A | The Renewal Agreement For The Out-Of-School Time Programs For High School Youth Option II Transition To Adulthood Serving In-School Youth | Mosholu Montefiore Community Center, Inc. | 4/1/15 |
| Mayor's Fund to Advance NYC | N/A | Social Innovation Fund Project Rise Program in the Bronx | The Door, A Center of Alternatives, Inc. | 4/1/15 |
| NYC DYCD | 766615 | Adult Literacy Program ABE/HSE | The Door, A Center of Alternatives, Inc. | 4/1/15 |
| NYC DYCD | 810101B | Neighborhood Development Area (NDA) Bronx | The Door, A Center of Alternatives, Inc. | 4/1/15 |