**Exhibit A**

**Interim Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Federation Employment and Guidance                Chapter 11
Service, Inc. d/b/a FEGS,                          Case No. 15-71074 (____)

                    Debtor.
------------------------------------------------------------x

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR (A) TO OBTAIN POST-PETITION SECURED, SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND 4001(C)

Upon the Motion, dated March 18, 2014 (the "**Motion**"),[1] of Federation Employment and Guidance Service, Inc. d/b/a F.E.G.S. ("**FEGS**"), as debtor and debtor-in-possession (the "**Debtor**" or "**FEGS**") in the above referenced chapter 11 case (the "**Chapter 11 Case**"), for entry of an interim order (the "**Interim Order**") and final order (the "**Final Order,**" and together with the Interim Order, the "**Financing Orders**"), pursuant to sections 105(a), 361, 362, 363, and 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Local Rules**"), seeking:

    a) authorization under section 364(c) of the Bankruptcy Code and Rule 4001(c) of the Bankruptcy Rules for the Debtor to obtain secured, superpriority postpetition financing in an aggregate amount not to exceed $10,000,000 (the "**DIP Facility**"), of which the Debtor is seeking authority to borrow up to $5,000,000 on an interim basis, all in

---

[1]     Capitalized terms used in this Order, unless otherwise defined herein, shall have the meanings ascribed to such terms in the Motion.

accordance with that certain Debtor in Possession Credit Agreement (the "**DIP Loan Agreement**") by and among the Debtor and United Jewish Appeal Federation of Jewish Philanthropies of New York, Inc. (the "**Lender**"), substantially in the form annexed hereto as Exhibit A;

b) authorization for the Debtor to grant security interests, liens, and superpriority administrative expense claims, including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and related protections to the Lender to secure all obligations of the Debtor under the DIP Facility, in accordance with the provisions of the Financing Orders and as set forth in DIP Loan Agreement;

c) authorization for the Debtor to execute and deliver the DIP Loan Agreement and any and all other documents related to or otherwise necessary to evidence or secure (including any and all mortgages and UCC-1 financing statements) the DIP Facility (collectively, the "**DIP Loan Documents**") and to perform and be bound by all of its obligations thereunder, and to perform such other acts as may be necessary or required under or in connection with the DIP Loan Documents and pursuant to or in connection with the provisions of the Financing Orders;

d) authorization under section 363 of the Bankruptcy Code and Rules 4001(b) and 6004 of the Bankruptcy Rules for the Debtor to use any cash collateral (as defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**") in which liens and security interests are asserted by those lenders who advanced funds to the Debtor prepetition, and the proceeds from the DIP Facility, for general working capital purposes and general corporate purposes relating to the postpetition operations and the costs and expenses associated with this Chapter 11 Case, including allowed fees of professionals, all in accordance with the terms of the DIP Budget,[2] the initial copy of which is annexed hereto as Exhibit B;

e) authorization for the Debtor to provide adequate protection to the those entities (the "**Prepetition Secured Creditors**") with liens and security interests in the Debtor's assets as of the Petition Date (as hereinafter defined) (the "**Prepetition Collateral**") in connection with the relief sought herein, pursuant to sections 363(e) of the Bankruptcy Code, for any diminution in the value of their respective interests in the Prepetition Collateral resulting from the Debtor's use, sale or lease of such Prepetition Collateral, Cash Collateral, the Carve Out and the imposition of the automatic stay;

f) subject only to and effective upon entry of a Final Order, the limitation of the Debtor's right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

g) to vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent provided in the DIP Loan Documents and the Financing Orders;

---

[2]    As used herein, the term "DIP Budget" shall have the meaning ascribed to it in the DIP Loan Agreement and the other DIP Loan Documents.

h) to waive any applicable stay as provided in the Bankruptcy Rules and provide for the immediate effectiveness of the Financing Orders; and

i) to schedule a final hearing (the "**Final Hearing**") on the Motion no later than twenty-five (25) calendar days' after the entry of this Interim Order to consider entry of the Final Order authorizing the balance of the borrowings under the DIP Loan Documents and related relief;

A hearing having been held by this Court on [____], 2015 (the "**Interim Hearing**"); and the Court having considered the Motion and all pleadings related thereto, including the record made at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

## THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    Petition Date. On March 18, 2015 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C., §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice. The Debtor has provided notice of the Motion and the Interim Hearing by facsimile, electronic mail, overnight mail or first class mail to: (a) the Debtor's twenty (20) largest unsecured creditors; (b) each of the Debtor's Prepetition Secured Creditors, including, without limitation, JP Morgan Chase Bank ("**Chase**") and Bank of America; (c) the Office of the United States Trustee for the Eastern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Stephen Karotkin, attorneys for the Lender; and (f) the following state and local taxing and regulatory authorities: (i) the Centers for

Medicare and Medicaid Services, (ii) the New York State Department of Health, (iii) the United States Attorney for the Eastern District of New York, (iv) the Attorney General of the State of New York, (v) Corporation Counsel for the City of New York, (vi) Counsel for New York City Human Resources Administration; (vii) the New York State Department of Labor, (viii) Counsel for OPWDD, (ix) Counsel for OMH, (x) the Dormitory Authority of the State of New York ("**DASNY**"); (xi) Counsel to DASNY; (xii) the Internal Revenue Service, and (xiii) the New York State Department of Taxation and Finance; (collectively, the "**Notice Parties**").   The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing.   Under the circumstances, the foregoing notice to the Notice Parties (i) was, in the Debtor's good faith belief, the best available under the circumstances, (ii) constitutes due and sufficient notice of the Motion and the Interim Hearing, and (iii) complies with Bankruptcy Rules 4001(b) and 4001(c).   No further or other notice of the relief sought at the Interim Hearing is necessary or required.

        D.    <u>Committee Formation</u>.   As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**").

        E.    <u>Findings Regarding DIP Facility and Cash Collateral</u>.

        1)    The Debtor has an immediate and critical need to obtain post-petition financing on an interim basis under the DIP Facility and to use Cash Collateral.   Access to the DIP Facility and the use of Cash Collateral is critical and vital to the Debtor's ability to fund its postpetition operating requirements in a manner that will permit the continued safe and orderly transition of its numerous client related services to other providers while preserving and maintaining the value of its assets.   Having adequate financing in place also will provide the

Debtor's vendors and suppliers with the comfort of knowing that during this transition period, the Debtor will have the financial ability to fund the ongoing purchase of goods and services and otherwise pay its postpetition obligations as they become due. Of no less import is the fact that absent adequate funding, the Debtor would not have the ability to ensure continuity of care and the safety of its at-risk client population and preserve value for the benefit of its creditors. Consequently, without interim access to the DIP Facility and the continued use of Cash Collateral as provided in this Interim Order, the Debtor and its estate would suffer immediate and irreparable harm.

2)       The Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, or (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code on terms equal to or more favorable than those set forth in the DIP Loan Agreement and the other DIP Loan Documents. The Debtor requires both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order in order to address its postpetition liquidity needs.

3)       The Lender has indicated a willingness to provide the Debtor with financing on an interim basis, but solely on the terms and conditions set forth in this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents. After considering all of its alternatives, the Debtor has concluded, in the exercise of its sound business judgment, that the financing to be provided by the Lender pursuant to the terms of this Interim Order, the DIP Loan

3171662V.1

Agreements, and the other DIP Loan Documents represents the best financing currently available to the Debtor.

       4)     The DIP Facility has been negotiated in good faith and at arm's length between the Debtor and the Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility, the other DIP Loan Documents, and this Interim Order shall be deemed to have been extended by the Lender in "good faith" (as that term is used in section 364(e) of the Bankruptcy Code) and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Lender (and its successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

       5)     The security interests and liens granted pursuant to this Interim Order to the Lender are appropriate under section 364(c) of the Bankruptcy Code because, among other things, such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in property of the Debtor's estate.

       6)     Good cause has been shown for entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). In particular, the authorization granted under the terms of this Interim Order for the Debtor to execute the DIP Loan Agreement and DIP Loan Documents, to continue using Cash Collateral, and to obtain interim financing on the terms and conditions of the DIP Loan Agreement, the other DIP Loan Documents and this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this Interim Order is in the best interest of the Debtor, its estate and creditors. The terms of the DIP Loan Agreement and the other DIP Loan Documents (including the Debtor's continued use of

Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

F.  Based on the foregoing and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  Approval of Motion.  The Motion is approved as provided in this Interim Order.  This Interim Order shall become effective immediately upon its entry.  To the extent the terms of the DIP Loan Agreement or the other DIP Loan Documents differ in any respect from the terms of this Interim Order, this Interim Order shall control.

2.  Approval of DIP Agreements and DIP Documents; Authority Thereunder. The Debtor is authorized to enter into the DIP Loan Agreement, the other DIP Loan Documents and such additional documents, instruments, and agreements as may be reasonably required by the Lender to implement the terms or effectuate the purposes of the DIP Loan Agreement, the other DIP Loan Documents or this Interim Order.  The Debtor is authorized to borrow money under the DIP Facility on an interim basis up to an aggregate principal amount not to exceed $5,000,000, subject to the terms of this Interim Order, the DIP Loan Agreement, and the other DIP Loan Documents.

3.  Use of Cash Collateral and DIP Loans.  The Debtor is hereby authorized to use the Cash Collateral and proceeds of the DIP Facility solely to: (i) subject to paragraph 13 of this Interim Order, pay fees and expenses of professionals retained by the Debtor or the Creditors' Committee, if appointed in the Chapter 11 Case, to the extent set forth in the DIP Budget and this Interim Order and subject to such other carve-outs as may be agreed to by the

7

Lender, to the extent such professional fees and expenses are allowed by order of the Bankruptcy Court; and (ii) fund general, ordinary course corporate and working capital requirements of the Debtor, in each case, solely in accordance with the DIP Budget and the terms of the DIP Loan Agreement, the other DIP Loan Documents and this Interim Order.

4.    <u>Validity of DIP Documents</u>.    Upon execution and delivery of the DIP Loan Agreement or any other DIP Loan Document, the DIP Loan Agreement and the other DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms thereof.    No obligation, payment, transfer or grant of security or priority under the DIP Loan Agreement, the other DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or be subject to any defense, reduction, setoff, recoupment or counterclaim.

5.    <u>DIP Loans</u>.    All loans made to or issued for the benefit of (or deemed issued for the benefit of) the Debtor on or after the Petition Date under the DIP Facility (collectively, the "**DIP Loans**"), all interest thereon, and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtor to the Lender under the DIP Loan Agreement, the other DIP Loan Documents and/or this Interim Order shall hereinafter be referred to as the "**DIP Obligations**." The DIP Obligations: (i) shall be evidenced by the books and records of the Lender; (ii) shall bear interest payable at the rates and at the times set forth in the DIP Loan Agreement or other DIP Loan Documents; (iii) shall be secured and have the priority provided for in this Interim Order and in the DIP Loan Agreement; (iv) shall be payable in accordance with the terms of the DIP Loan Agreement or the relevant DIP Loan Documents;

3171662V.1

and (v) shall otherwise be governed by the terms set forth herein and in the DIP Loan Agreement and the other DIP Loan Documents.

      6.      <u>Conformity with DIP Budget</u>.  Subject to and in accordance with the terms of the DIP Loan Agreement, all DIP Loans shall be made at the Lender's sole discretion and shall be utilized solely in accordance with the DIP Budget.  On the Wednesday of each week during the term of the DIP Loan Agreement, the Debtor shall provide to the Lender a written reconciliation showing actual receipts and disbursements for the preceding week compared with the DIP Budget.  The DIP Budget may be updated from time to time, and shall be updated at least monthly to reflect a full 13 week period, and, in all cases, the DIP Budget shall be subject to the Lender's approval, in its sole discretion.  If (a) actual disbursements under any line item of the DIP Budget for any four week rolling period exceed the budgeted disbursements for such period in such line item by more than ten (10) percent, or (b) aggregate actual disbursements under the DIP Budget for any of four week rolling period exceed the aggregate budgeted disbursements for such four week rolling period by more than five (5) percent, then either of the same shall constitute an Event of Default[3] under the DIP Loan Agreement unless the Lender consents in writing to such deviation.  In addition, if (i) actual receipts under any line item of the DIP Budget for any four week rolling period are less than the budgeted receipts for such period in such line item by more than ten (10) percent, or (ii) aggregate actual receipts under the DIP Budget for any four week rolling period are less than the aggregate budgeted receipts for such four week rolling period by more than five (5) percent, then either of the same shall constitute an Event of Default under the DIP Loan Agreement unless the Lender consents in writing to such deviation.

---

[3] As used herein, the term "Event of Default" shall have the meaning ascribed to it in the DIP Loan Agreement.

7.    <u>DIP Liens and DIP Collateral</u>. As security for the full and timely payment of the DIP Obligations, the Lender is hereby granted, pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, valid, enforceable, unavoidable, and fully perfected first priority security interests in and liens and mortgages upon (collectively, the "**DIP Liens**") all existing and after-acquired tangible and intangible personal and real property and assets of the Debtor of any kind or nature, whether existing prior to or acquired after the Petition Date and wherever located, including, without limitation, accounts, accounts receivable, inventory, machinery, contract rights, intellectual property, equipment, fee and leasehold interests in real property (including, without limitation, the two parcels of real property commonly known as 3312-30 Surf Avenue, Brooklyn, NY and 3600 Jerome Avenue, Bronx, NY), general intangibles, notes, cash, deposit accounts, securities, securities accounts, investment property, rights, claims and causes of action, and all products and proceeds of all of the foregoing (collectively, the "**DIP Collateral**"), subject only to (a) the Carve-Out (as hereinafter defined) and (b) valid, enforceable, unavoidable, and perfected liens of record in existence on the Petition Date; <u>provided</u> that the DIP Liens shall not attach to the Debtor's claims and causes of action pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code (the "**Avoidance Actions**"), or to any proceeds or property recovered under such sections of the Bankruptcy Code whether by judgment, settlement or otherwise (the "**Avoidance Action Proceeds**").

8.    <u>Adequate Protection of Prepetition Secured Creditors</u>.  As adequate protection for, and solely to the extent of any postpetition diminution in the value of the Prepetition Collateral on account of the Debtor's use of Cash Collateral, and any decline in value from the imposition of the automatic stay or the Debtors' use, sale, depreciation, pledge or

10

disposition of the Prepetition Collateral, and subject to the Carve-Out, the Prepetition Secured Creditors, for the benefit of themselves, are hereby granted (a) valid, enforceable, unavoidable, and fully perfected security interests in and replacement liens upon the DIP Collateral, junior and subordinated in all respects to the (i) Carve-Out, (ii) the DIP Liens and (iii) the liens of the Prepetition Secured Creditors in the Prepetition Collateral (the "**Adequate Protection Liens**"); and (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claim**") that shall be immediately junior and subordinated in all respects to the Carve-Out and the DIP Superpriority Claims (as hereinafter defined) held by the Lender.  As further adequate protection, and in consideration of the consent of the Prepetition Secured Creditors, including, without limitation, Chase and DASNY, to the continued use of their Cash Collateral, the Debtor shall make payments of interest as and when due, at the non-default rate, in accordance with the DIP Budget, and shall pay reasonable legal expenses as set forth in the underlying documents governing the respective obligations owed to the Prepetition Secured Creditors.

9.    _Other Liens_.  The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (ii) unless otherwise expressly provided for in the DIP Loan Agreement or the other DIP Loan Documents, any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtor.  No claim or lien having a priority superior to or _pari passu_ with those granted by this Interim Order with

respect to the DIP Obligations shall be granted or allowed until the DIP Obligations have been indefeasibly paid in full in cash.

          10.     Automatic Effectiveness of Liens.  The DIP Liens and the Adequate Protection Liens shall not be subject to challenge, dispute or subordination and shall immediately upon entry of this Interim Order attach and become valid, fully perfected, enforceable, unavoidable and effective by operation of law as of the Petition Date without any further action by the Debtor, the Lender, the Prepetition Secured Creditors, and the Court, and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, leasehold mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of any other actions.  If the Lender hereafter requests that the Debtor execute and deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by the Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtor is authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Lender is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded on the Petition Date.  A copy of this Interim Order may, in the discretion of the Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such copy of this Interim Order for filing and recording.

          11.     DIP Lenders' Superpriority Claims.  In addition to the liens and security interests granted to the Lender pursuant to this Interim Order, and subject only to the Carve-Out,

in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Loans) hereby constitute allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") with priority over any and all administrative expenses of the Debtor, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provisions of the Bankruptcy Code (whether incurred in the Chapter 11 Case or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding relating hereto or thereto).  The DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor, and all proceeds thereof, other than Avoidance Action Proceeds.  The DIP Liens and the DIP Superpriority Claims shall be senior in all respects to the Adequate Protection Liens and the Adequate Protection Superpriority Claims.

12.    Interest.  Interest on the DIP Obligations shall accrue at the rates (including any default rate) and shall be paid at the times as provided in the DIP Loan Agreement and other DIP Loan Documents.

13.    Carve-Out.  Upon and following an Event of Default with respect to which a Carve-Out Trigger Notice (as hereinafter defined) is issued, to the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject to the payment of the Carve-Out.  For purposes of this Interim Order, the "**Carve-Out**" shall mean, collectively: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) pursuant to Bankruptcy Code section 726,

3171662V.1

in the event the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $25,000; and (iii) at any time after the first business day following the delivery of a Carve-Out Trigger Notice, (x) all accrued and unpaid fees and expenses incurred by the persons or firms retained by the Debtor or any Creditors' Committee pursuant to an order of the Bankruptcy Court (or whose application for retention is then pending, provided such application is ultimately approved) (collectively the "**Estate Professionals**") incurred in accordance with the DIP Budget prior to the business day following delivery of the Carve Out Trigger Notice, plus (y) $500,000 of unpaid fees and expenses of Estate Professionals incurred on or after the date of delivery of the Carve-Out Trigger Notice, in each case with respect to immediately preceding clauses (x) and (y) to the extent such fees and expenses are allowed at any time by order of the Bankruptcy Court and regardless of whether allowed by interim order, procedural order or otherwise (the "**Professionals' Carve-Out**"); provided that the Carve Out shall not be available to pay fees and expenses incurred in connection with the initiation or prosecution of (1) any challenge to the validity, perfection, priority, amount, extent, enforceability, or unavoidability of the DIP Obligations, the DIP Superpriority Claims or the DIP Liens or any other claims or causes of action against the Lender or its past and present officers, directors, employees, heirs, successors and assigns, executors, administrators, agents, volunteers, representatives, consultants, financial advisors, accountants, attorneys, professionals and other advisors, or  (2) any claims, causes of action, adversary proceedings or other litigation against the Prepetition Secured Creditors in respect of the Prepetition Collateral and related loan documents, provided that the limitation in this sub-clause (2) shall not apply to any fees and expenses incurred by persons or firms retained by the Creditors' Committee, if appointed, in

connection with any investigation by the Creditors' Committee of or claims against the Prepetition Secured Creditors in respect of the Prepetition Collateral and related loan agreements in an aggregate amount not to exceed $20,000. Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been issued, the Debtor shall be permitted to pay fees to Estate Professionals and reimburse expenses incurred by Estate Professionals, to the extent set forth in the DIP Budget, that are allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code and compensation procedures approved by the Bankruptcy Court, as the same may be due and payable, and the same shall not reduce the Professionals' Carve-Out. In any event, the Lender reserves the right to review and object to any fee statement, interim application or monthly application issued or filed by Estate Professionals.

14.    _Debtor's Stipulations_.    The Debtor, on behalf of itself and each of its successors and assigns, including a chapter 7 or chapter 11 trustee, hereby stipulates and is hereby deemed: (i) to release and discharge the Lender, together with its past and present officers, directors, employees, heirs, successors and assigns, executors, administrators, agents, volunteers, representatives, consultants, financial advisors, accountants, attorneys, professionals and other advisors, from any and all claims, causes of action and remedies (whether under the Bankruptcy Code or other applicable law) arising out of, based upon or in any way related to the DIP Obligations, the DIP Collateral, the DIP Liens, or the relationship between the Lender and the Debtor prior to the Petition Date; and (ii) to waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, amount, extent, enforceability, and unavoidability (under the Bankruptcy Code or otherwise) of the DIP Obligations, the DIP Liens, the DIP Collateral, and the DIP Superpriority Claims.

3171662V.1

15. <u>Additional Restrictions On Use of DIP Loan And Cash Collateral</u>. No portion of the DIP Facility, the DIP Collateral, the Cash Collateral, or the Carve-Out and no disbursements set forth in the DIP Budget, shall be used directly or indirectly, including for the payment of professional fees, disbursements, costs or expenses incurred, by the Debtor, the Creditors' Committee, any other committee or any other person or entity, in connection with (i) asserting any claims or causes of action against the Lender (or its past and present officers, directors, employees, heirs, successors and assigns, executors, administrators, agents, volunteers, representatives, consultants, financial advisors, accountants, attorneys, professionals and other advisors), including, without limitation, any action challenging or raising any defenses to the DIP Obligations, the DIP Superpriority Claims or the DIP Liens, and (ii) (except as provided in subclause (2) of the proviso to paragraph 13 hereof and subject to the $20,000 cap set forth therein) asserting any claims or causes of action against the Prepetition Secured Creditors, including, without limitation, any action challenging or raising any defenses to the Prepetition Secured Debt or the Prepetition Liens.

16. <u>506(c) Waiver</u>. Subject only to and upon the entry of the Final Order, the Debtor shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender or the Prepetition Secured Creditors upon, the DIP Collateral or the Prepetition Collateral. In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

17. <u>Proofs of Claim</u>. The Lender will not be required to file proofs of claim or requests for administrative expenses in the Chapter 11 Case and, nothwithstanding anything

16

contained in this Interim Order, the Debtor's stipulations and the other provisions of this Interim Order related to the claims granted herein shall be deemed to constitute a timely filed proof of claim or request for administrative expense, as applicable.

18.    Restrictions on Granting Postpetition Liens.    At all times while any portion of the DIP Obligations remain outstanding, except for (i) the Carve-Out, (ii) as expressly provided in this Interim Order, and (iii) as otherwise expressly permitted by the DIP Loan Agreement or the other DIP Loan Documents, the Debtor shall be enjoined and prohibited from granting mortgages, security interests, or liens in the DIP Collateral or any portion thereof to any parties, and no claim or lien having a priority superior to or *pari passu* with those granted pursuant to this Interim Order to the Lender shall be granted or allowed, pursuant to sections 364(d), 503(b), or 507(b) of the Bankruptcy Code or otherwise.    The Debtor is enjoined and prohibited from at any time using the DIP Loans except pursuant to the terms of this Interim Order and the DIP Loan Documents.

19.    Beneficiaries of Order.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Prepetition Secured Creditors, and the Debtor, and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of the Debtor's estate or with respect to its property, including any trustee that may be appointed in the Chapter 11 Case or appointed if the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code).

20.    Survival of Order.    The provisions of this Interim Order and any actions taken pursuant thereto (i) shall survive the entry of any order: (a) confirming any chapter 11 plan in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing or transferring the Chapter 11 Case; and (ii) shall continue in

17

full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their validity and priority as provided by this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Documents. The DIP Obligations shall not be discharged by the entry of any order confirming any chapter 11 plan in the Chapter 11 Case, and the Debtor shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

21.    Protection Under Section 364(e).  If any or all of the provisions of this Interim Order are hereafter reversed, modified, amended, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity of any DIP Obligations, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Agreement or the other DIP Loan Documents with respect to any DIP Obligations. Notwithstanding any such reversal, modification, amendment, vacatur or stay, any DIP Obligations incurred prior to the actual receipt by the Lender of written notice of the effective date of such reversal, modification, amendment, vacatur or stay, shall be governed in all respects by the original provisions of this Interim Order and the DIP Loan Documents, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents with respect to such DIP Obligations.

22.    No Dismissal.  Under no circumstance shall the Chapter 11 Case be dismissed unless the DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the provisions of the DIP Loan Agreement and the other DIP Loan Documents; provided that in the event of such dismissal, the DIP Liens shall remain in full force and effect,

with all rights and remedies attendant thereto.  In addition, unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the provisions of the DIP Loan Agreement and the other DIP Loan Documents, the Debtor shall not seek, and it shall constitute an immediate Event of Default (with no further action of the Court required), if the Debtor seeks, or if there is entered, (i) any modification or extension of this Interim Order without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by the Lender, (ii) an order converting or dismissing the Chapter 11 Case, (iii) an order appointing a chapter 11 trustee in the Chapter 11 Case, or (iv) an order appointing an examiner with enlarged powers in the Chapter 11 Case.  If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the superpriority claims, liens, security interests, and other rights and remedies granted to the Lender pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been indefeasibly paid and satisfied in full (and that such superpriority claims, liens, security interests and other rights and remedies shall, notwithstanding such dismissal, remain binding on all parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, security interests, and other rights and remedies.

23.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Lender to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in the DIP Loan Documents and to take any or all of the

3171662V.1

following actions without further order of or application to this Court: (i) cease making any DIP Loans to the Debtor; (ii) immediately declare all DIP Obligations to be immediately due and payable; (iii) exercise any lien enforcement rights or remedies with respect to the DIP Collateral; or (iv) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Agreement, the other DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that the Lender shall provide five (5) business days' written notice (by facsimile, telecopy or otherwise) to counsel to the Debtor, counsel to any Creditors' Committee, and the U.S. Trustee prior to exercising any lien enforcement rights or remedies with respect to the DIP Collateral (other than the rights described in clauses (i) and (ii) above, to the extent they may be deemed remedies in respect of the DIP Collateral). Upon entry of this Interim Order, no party in interest shall have the right to contest the enforcement of the remedies set forth in this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party in interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of this Interim Order, the DIP Loan Agreement or the other DIP Loan Documents. The rights and remedies of the Lender specified herein are cumulative and not exclusive of any rights or remedies that the Lender may have under the DIP Loan Agreement, the other DIP Loan Documents or otherwise. The Debtor shall cooperate fully with the Lender in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.

      24.      <u>Limitations on Borrowings</u>. In further consideration for the DIP Lender's agreement to provide the DIP Facility and the use of the the Prepetition Secured Creditors' Cash

Collateral, the Debtor, on behalf of itself and its estate, agrees that neither the Debtor nor any party acting on its behalf (including any Creditors' Committee) may seek authorization for the Debtor to borrow money from any person other than the Lender to the extent that the repayment of such borrowings is to be secured by a lien or security interest that is senior or equal to the liens and security interests granted to the Lender or the Prepetition Secured Creditors, unless the Debtor provides for the immediate indefeasible payment in full in cash of the DIP Obligations and the Prepetition Secured Obligations, at closing in connection with such borrowings in accordance with the and subject to the rights, limitations and priorities set forth in this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents.

25.    <u>Modifications of DIP Agreements and DIP Budgets</u>.    The Debtor is authorized, without further order of this Court to enter into agreements with the Lender providing for any non-material modifications to the DIP Loan Agreement and the other DIP Loan Documents, or of any other modifications to the DIP Loan Agreement or the other DIP Loan Documents necessary to conform such documents to this Interim Order; <u>provided, however</u>, that notice of any material modification or amendment to the DIP Loan Agreement or the other DIP Loan Documents shall be provided to counsel to the Creditors' Committee, if any, and the U.S. Trustee, each of whom shall have five (5) calendar days from the date of such notice within which to object in writing to such modification or amendment. If the Creditors' Committee, if any, or the U.S. Trustee timely objects to any material modification or amendment to the DIP Loan Agreement or the other DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

26.    <u>Termination of Commitments</u>.    The commitment of the Lender to make any DIP Loans shall terminate and all amounts owing under or in respect of the DIP Facility

shall be due and payable on the earliest to occur of any of the following: (i) the Maturity Date (as defined in the DIP Loan Agreement), (ii) the effective date of a chapter 11 plan confirmed in the Chapter 11 Case, (iii) the Debtor's receipt of written notice (which notice may be delivered by facsimile or other electronic transmission and may be delivered to any officer of the Debtor) of the occurrence of an Event of Default and a determination by the Lender to terminate the commitments (such notice, a "**Carve-Out Trigger Notice**"), (iv) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (v) the appointment or election of a trustee in the Chapter 11 Case, (vi) the date of dismissal of the Chapter 11 Case by the Court, (vii) this Order ceasing to be in full force and effect, unless superseded by the Final Order, (viii) the entry of any order of the Court that materially impairs the security interests, claim priorities, rights or protections granted to the Lender hereunder or under the DIP Loan Documents, or (ix) the failure by the Debtor to make any payment to the Lender when due in accordance with this Interim Order, the DIP Loan Agreement, and or any other DIP Loan Document.

27.     Control Person Liability. Nothing contained in this Interim Order, the DIP Loan Agreement, or the other DIP Loan Documents shall in any way be construed or interpreted to impose, or allow the imposition of, any liability upon the Lender or its affiliates for any claims or causes of action arising from or related to any prepetition or postpetition activities of the Debtor.

28.     Findings of Fact and Conclusions of Law. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order.  Notwithstanding Bankruptcy Rule 4001(a)(3) and 6004(h), or any other

Bankruptcy Rule or Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

29.    <u>Final Hearing</u>.  The Final Hearing is scheduled for _____, 2015 at __:__ _.m. (prevailing Eastern Time) before this Court.  The Debtor shall promptly serve a notice (the "**Notice**") of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the parties having been given notice of the Interim Hearing, to the Notice Parties and any other party that has since filed a request for notices with this Court, and to any statutory committee after the same has been appointed (including the Creditors' Committee), or such statutory committee's counsel, if the same shall have been appointed.  The Notice shall state that any party in interest objecting to the relief sought at the Final Hearing shall file written objections with the United States Bankruptcy Court for the Eastern District of New York and shall serve such objections on: (i) Garfunkel Wild, PC, 111 Great Neck Road, Great Neck, New York 11021, Attn: Burton S. Weston, Esq., Counsel to the Debtor; (ii) the United States Trustee for the Eastern District of New York (the "<u>U.S. Trustee</u>"); (iii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Stephen Karotkin, counsel to the Lender; and (iii) on each of the other Notice Parties, so as to be received by no later than _:__ _.m. (prevailing Eastern Time) on _____, 2015.  Any objections to any provisions of this Interim Order or the relief sought at the Final Hearing by the Motion shall be deemed waived unless timely filed and served in accordance with this Paragraph.

3171662V.1

30.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: March __, 2015

_____

UNITED STATES BANKRUPTCY JUDGE