# CARY KANE

A LIMITED LIABILITY PARTNERSHIP FOR THE PRACTICE OF LAW

March 19, 2015

**VIA ECF FILING**
Hon. Judge Robert E. Grossman
U.S. Bankruptcy Court
Eastern District of New York (Central Islip)
Alfonse M. D'Amato U.S. Courthouse
290 Federal Plaza
Room 860
Central Islip, NY 11722

Dear Judge Grossman;

      We are counsel to Local 215, District Council 1707, American Federation of State, County and Municipal Employees, the Union representing 1400 employees of Federation Employment Guidance Services ("FEGS") the Petitioner in this bankruptcy proceeding. We are writing to partially oppose the proposed Order sought by FEGS in its Motion For Interim and Final Orders (I) Authorizing Payment of Prepetition Wages, Compensation, Employee Benefits and Expense Reimbursement, (II) Authorizing and Directing Banks to Honor Checks with Respect Thereto, at Dkt Entry 6, to the limited extent described herein, namely insofar as it fails to recognize FEGS' obligations under the Collective Bargaining Agreement ("CBA") and could be interpreted as authorization to fail to comply with its obligations pursuant to the CBA without having complied with the requirements of Section 1113 of the Bankruptcy Code, 11 U.S.C. Section 1113, providing for rejection of a CBA.

      The Union is asking the Court to modify the requested Order to reflect FEGS' ongoing obligations under its CBA with the Union because, contrary to what is stated in the Affidavit of Kristen Woodlock Pursuant to Local Bankruptcy Rule 1007-4 and in Support of First Day Motions, which FEGS has submitted to the court in support of the motion, FEGS has told the Union that it intends not to honor the severance pay requirements of the CBA. This and the other facts set forth herein are taken from the Affidavit of Lorraine Guest in Partial Opposition to Debtor's Motion For Interim and Final Orders (I) Authorizing Payment of Prepetition Wages, Compensation, Employee Benefits and Expense Reimbursement, (II) Authorizing and Directing Banks to Honor Checks with Respect Thereto, filed with the court on 3.18.2015.

      Local 215 and FEGS are parties to a Collective Bargaining Agreement ("CBA") see Exhibit 1 annexed to Guest Affidavit. In July of 2014, the CBA was renewed for an additional term running until June 30, 2017. See Exhibit 2 to Guest Affidavit.

Article VI, paragraph D (1) of the CBA provides that "employees shall be entitled to severance pay as set forth immediately below

| | |
|---|---|
| More than two but less than three years of service … | 5 days |
| Three to four years of service … | 7 days |
| Four to five years of service … | 10 days |
| Five to Six years of service … | 12 days |
| Six to seven years of service … | 15 days |
| Seven to eight years of service … | 17 days |
| More than eight years of service … | 20 days |
| Fifteen or more years of continuous service … | 45 days" |

See Exhibit "A" at 25, Guest Affidavit.

Severance pay is paid in the normal course of business in the paycheck following the last check received by the employee for regular wages.

When asked in the conference call when Union members could expect to receive severance pay, FEGS told the union that its members would have a claim for it at the end of the bankruptcy process.

The Union does not believe that there will be money sufficient to pay such obligations at the end of the process. In meetings held between the Union and FEGS officials before the filing of the bankruptcy petition, FEGS told the Union that if FEGS timely paid employees severance pay as they were retrenched that FEGS expected to run out of money and would be unable to pay severance pay to employees retrenched later in the process of moving FEGS' social service programs to other providers.

In her affidavit, Woodlock fails to tell the court that it is legally obligated to pay severance to the 1400 employees covered by the CBA and merely refers to its obligation to pay severance as an employer "policy." See Paragraph 62 Woodlock Affidavit; also see Exhibit B to Motion for Interim and Final Orders (I) Authorizing Payment of Prepetition Wages, Compensation, Employee Benefits and Expense Reimbursement, (II) Authorizing and Directing Banks to Honor Checks with Respect Thereto.

Woodlock tells the court that "[a]s part of the Wage Authorization Motion, the Debtor also requests authority, in its sole discretion, to continue its existing severance policy and pay prepetition severance obligations owed as of the Petition Date, and to provide any eligible Employees with a severance benefit in the event such Employee is terminated postpetition. The

# CARY KANE

Hon. Judge Robert E. Grossman
March 19, 2015
Page 3 of 4

Debtor believes the foregoing relief is necessary to maintain moral and stability among its Employee workforce." Paragraph 62 Woodlock Affidavit.

In its motion, FEGS seeks an Order granting it the discretion, but not the obligation, "to continue its existing severance policy and pay prepetition Severance Obligations owed as of the Petition Date, and to provide any eligible Employees with a Severance benefit in the event such Employee is terminated postpetition." Paragraph 3 of the proposed Order.

Because FEGS admits to having 1902 employees, see Woodlock Affidavit paragraph 58, of which 1400 are covered by the CBA, it appears to the Union that FEGS is seeking the authority to pay severance to nonunion and managerial employees while at the same time telling the Union that it will not be timely making severance payments to unionized workers covered by the CBA.

FEGS has already begun to disregard some of their obligations pursuant to the CBA: on this basis, on February 24, 2015 the Union filed Unfair Labor Practice charges which are pending at the National Labor Relations Board, in case 2-CA-147170, which asserts *inter alia* that FEGS intends not to pay the severance pay to the employees owed under the CBA. See Exhibit 5 to Guest Affidavit.

FEGS' declaration to the Union that it will not comply with the severance pay requirements of the CBA is at odds with its legal obligations as the Debtor in Possession. By announcing it is not intending to honor the requirements of the CBA while seeking discretion from the court to pay or not to pay severance, FEGS is seeking to "alter" or "modify" the terms of the CBA without first complying with the provisions of 11 USC §1113. That section of the Bankruptcy Code allows a rejection or alteration of a collective bargaining agreement only after the requirements contained in that section are met.

"Section 1113 governs the means by which a debtor may assume, reject or modify its collective bargaining agreement." *Matter of Ionosphere Clubs*, 922 F.2d 984 (2d Cir. 1990). Further, "No provision of [the Bankruptcy Code] shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of [section 1113]." 11 U.S.C. §1113(f).

In *Ionosphere* the Second Circuit held that "Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of Sec. 1113." 922 F.2d at 990. Further: "We hold that [Sec. 1113(f)] was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of Sec. 1113." 922 F.2d at 990-991. Finally, "Section 1113 unequivocally prohibits

# CARY KANE

Hon. Judge Robert E. Grossman
March 19, 2015
Page 4 of 4

the employer from *unilaterally* modifying *any provision* of the collective bargaining agreement." 922 F.2d at 992 (internal quotation omitted).

      The SDNY bankruptcy court has applied the *Ionosphere* holding to vacation and severance pay provisions under a CBA. In *Matter of Golden Distributors, Ltd.*, the SDNY affirmed the bankruptcy court's order that a union's vacation and severance pay claims are to be treated as priority claims equivalent to administrative expenses under §1113(f) which, for all practical purposes, creates a super-priority for post-petition payments due under a CBA. The SDNY judge observed that "the Bankruptcy Court concluded, in accordance with well-known and formally accepted precedent, that benefits such as vacation and severance pay as forms of wages, are allowable as expenses necessary for the preservation of the estate when earned post-petition." And

      The Second Circuit has found that severance pay accrues as of the date of termination, such that severance payments earned during a reorganization proceeding are entitled to priority as "costs and expenses" of the administration of the estate, pursuant to 11 U.S. C. §507(a)(1). *Strauss-Duparquet, Inc. v. International Brotherhood of Electrical Workers (IBEW) Local 3*, 386. F.2d 649, 651 (2d Cir. 1967). See also *In re: Bethlehem Steel Corp.*, 479 F.3d 167, 173 (2d Cir., 2007) ("As we subsequently reiterated…the employees in *Straus-Duparquet* 'earned' the severance payment when they were terminated during the pendency of bankruptcy proceedings, because the payment compensated them for the hardships associated with termination." Citing *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 (2d Cir. 1986)).

      For the foregoing reasons, the Union partially opposes the Employer's pending Motion to the extent it seeks to repudiate terms and conditions which FEGS is obligated to follow pursuant to its CBA with the Union. We ask that any Order issued by this Court authorizing FEGS to make ongoing wage, compensation, benefit and other such payments includes a requirement that FEGS do so in compliance with its CBA with the Union, unless and until the CBA is modified or rejected. I appreciate the Court's considerations.

Respectfully submitted,

Larry Cary