**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

| | |
|---|---|
| FEDERATION EMPLOYMENT AND GUIDANCE SERVICE INC. d/b/a/ FEGS,[1] | Chapter 11<br>Case No. 15-71074 (REG) |
| Debtor. | |

------------------------------------------------------------x

**ORDER (A) AUTHORIZING THE TRANSFER OF OPWDD CLIENT PROGRAMS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH TRANSFERS, AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of Federation Employment and Guidance Service, Inc. d/b/a FEGS ("**FEGS**" or the "**Debtor**") as a Chapter 11 debtor and debtor-in-possession in the above referenced Chapter 11 Case, seeking entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"): (i) authorizing the Debtor to enter into assignment/termination agreements, as applicable, (each a "**Transfer Agreement**" and collectively the "**Transfer Agreements**") attached to the Supplement to Debtor's Emergency Motion for Entry of an Order Authorizing the Transfer of OPWDD Client Programs and related relief filed on May 6, 2015 [Docket No. 205] (the "**Supplement**") pursuant to which the Debtor will transfer its portfolio of programs for people with developmental disabilities (the "**DD Programs**") to a small group of qualified agencies (the "**DD Acquiring Agencies**"), (ii) authorizing the Debtor to enter into the triple net leases, reimbursement agreements, and other related agreements (each a "**Ancillary Agreement** and collectively the "**Ancillary Agreements**") attached to the Supplement (iii) approving the assumption and assignment of certain executory contracts and unexpired leases

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.
[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

(the "**Assigned Agreements**") related to the DD Programs as set forth on the schedule annexed hereto, and (iv) granting related relief, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion, Amended Exhibit C to the Motion [Docket No. 134], the Supplement to Exhibit C [Docket No. 201] (the "**Assigned Agreement Supplement**"), the Supplement and the hearing on the Motion having been provided to all necessary parties, including, without limitation, all non-debtor counterparties to the Assigned Agreements, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Affidavit of Kristin Woodlock in Support of DD Program Transfers, dated as of April 3, 2015 [Docket No. 116]; and the objections filed on behalf of 3636 Greystone Owners, Inc. [Docket No. 213] and 315 Hudson LLC. [Docket No. 227] having been considered; and the evidence adduced and the full record of the hearings and all of the proceedings before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and, in accordance with its charitable mission, its clients, and all other parties in interest, and that the legal and factual bases set forth in the Motion establish just, good and sufficient cause for the relief granted herein; and all objections having been resolved, overruled, or addressed by this Order; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A. The Debtor has, to the extent necessary, satisfied (or will satisfy) the requirements of Bankruptcy Code sections 365(b)(1) and 365(f)(2) in connection with the assumption and

assignment of the Assigned Agreements. Except as otherwise set forth in this Order, any non-debtor counterparty to any of the Assigned Agreements that has not objected to the assumption and assignment to the DD Acquiring Agencies, the cure amounts (the "**Cure Amounts**") and security deposit amounts (the "**FEGS Deposit**"), each as set forth on the Assigned Agreement Supplement, or that has withdrawn or otherwise resolved its objection, is deemed to have consented to the assumption and assignment of such Assigned Agreement, the Cure Amounts and the FEGS Deposit.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. The relief requested in the Motion is hereby granted as set forth herein.

2. The Debtor may enter into Transfer Agreements, and take all further steps necessary to effectuate the transfer of the DD Programs to the DD Acquiring Agencies in accordance with the Transfer Agreements and the terms of this Order.

3. The Debtor may enter into the Ancillary Agreements, and take all further steps necessary to effectuate the leasing of the owned real property to the DD Acquiring Agencies in accordance with the Ancillary Agreements and the terms of this Order. With regard to Dormitory Authority of the State of New York ("**DASNY**"), to the extent that there is a conflict between (A) an Ancillary Agreement, on the one hand, and (B) any provision of a mortgage or loan document held, recorded and/or executed by DASNY, or any provision of any document issued or executed in connection with the issuance of bonds by DASNY for the purposes of making a loan to the Debtor (each a "**DASNY Agreement**"), on the other hand, the terms of the DASNY Agreement shall control.

4. Each of the Assigned Agreements described in Exhibit A to this Order is an executory contract or unexpired lease of real property capable of being assumed and assigned pursuant to section 365 of the Bankruptcy Code. The Debtor is hereby authorized, in accordance with Bankruptcy Code sections 105 and 365, to assume and assign the Assigned Agreements described in Exhibited A to this Order, pursuant to the Motion and the Transfer Agreements, effective as of the program transfer dates set forth in the respective Transfer Agreement and to take all such steps including, without limitation, paying the Cure Amounts, which shall be in the amounts set forth in the Assigned Agreement Supplement, and other pre-assignment expenses associated with such transfers, if any. With respect to the Assigned Agreements described in Exhibit B to this Order, including, without limitation, those real property leases that have expired by their terms, the Debtor is transferring to the respective DD Acquiring Agencies only that right, title and interest which the Debtor has immediately prior to such transfer. Nothing contained in this Order shall otherwise create, enlarge, expand, diminish or void any such right, title or interest once vested in the respective DD Acquiring Agencies (the "**Vested Rights**").

5. Notwithstanding anything to the contrary contained in this Order, to the extent a purely mathematical error in any of the Cure Amounts is raised by a non-debtor party to any of the Assigned Agreements, the Debtor is authorized, upon 5 days notice to the Committee, and without further order of this Court, to correct such mathematical error, with any unresolved disputes regarding the same to be resolved by this Court. No DD Acquiring Agency shall be liable for any costs associated with any Cure Amount disputes, including the cost, if any, of litigating such disputes and any additional amounts which may be required to be paid related thereto.

6. Subject to the Debtor's payment of the respective Cure Amounts, which is deemed to satisfy any Pre-Effective Date Lease Obligation as defined in the Transfer Agreements, and upon assignment or transfer of the Assigned Agreements, the Debtor shall be relieved of any and all further obligations under any such Assigned Agreement and, consistent with this Order, the Transfer Agreements, and the Ancillary Agreements, each non-debtor landlord party to an Assigned Agreement and each of the DD Acquiring Agencies, as tenant, shall retain and succeed to any rights, claims, defenses, remedies or interest in respect of the Vested Rights, whether existing or arising prior to or after the date of assignment of the Assigned Agreements, including, without limitation, any rights and defenses any landlord or tenant (including Debtor or any occupant) may have or may have had with respect to any notice of non-renewal that may have been served, and nothing contained in this Order shall be deemed in any way to affect such Vested Rights (such reservation, the "**Status Quo Retention**"). Notwithstanding anything in any of the Transfer Agreements or any of the Ancillary Agreements to the contrary, the Debtor shall have no obligation to fund or otherwise participate, but shall cooperate with the respective DD Acquiring Agency for as long as practicable and at the respective DD Acquiring Agency's expense, in any litigation between any non-debtor third party to an Assigned Agreement and any of the DD Acquiring Agencies regarding any of the Assigned Agreements or the rights conveyed thereunder, nor shall the Debtor have any obligation to indemnify any of the DD Acquiring Agencies with respect to the outcome of any such litigation, including, without limitation, determinations as to the existence or continuing validity of any Assigned Agreement.

7. The FEGS Deposit for each of the respective Assigned Agreements shall be in the amount set forth in the Assigned Agreement Supplement and, subject only to payment of the Cure Amount, if any, each of the DD Acquiring Agencies shall pay over to the Debtor in

accordance with each Transfer Agreement an amount equal to the FEGS Deposit (such payment, the "**Deposit Payment**") and each landlord shall continue to hold the respective FEGS Deposit in trust in connection with their respective Assigned Agreements.  Notwithstanding anything to the contrary in the Order, the FEGS Deposit shall not be reduced by the respective landlord for any reason attributable to Debtor's tenancy.  Upon each of the DD Acquiring Agencies making the Deposit Payment to the Debtor, the respective residual rights to the FEGS Deposit are vested in the respective DD Acquiring Agency, and the return, if any, of any FEGS Deposit under the terms of any Assigned Agreement shall be made to the respective DD Acquiring Agency.

8.      All parties' rights, claims and interests in any of the property being transferred, leased and/or licensed pursuant to this Order including, without limitation, issues regarding ownership of such property and the Debtor's ability to sell or otherwise transfer such property, subject to any rights conveyed pursuant to any of the Ancillary Agreements, are not, and shall not be, impaired or otherwise affected by this Order, and shall be fully protected and preserved to the same extent and in the same manner as existed immediately prior to the entry of this Order, provided, however, and subject to the Debtor's payment of the Cure Amounts, the Debtor shall be relieved of any and all further obligations under any such Assigned Agreement.  For the avoidance of doubt, and except to the extent assigned, terminated, or, pursuant to a subsequent order by this Court, rejected, the terms and conditions of any true equipment leases shall remain in full force and effect, to the same extent and in the same manner as existed immediately prior to the entry of this Order, pending further order of this Court.  Notwithstanding anything to the contrary in the Transfer Agreements or the Motion, the Debtor shall continue to be responsible for any valid obligations under the equipment leases, including, without limitation, the obligation to make lease payments, if any, and to ensure that proper insurance is maintained.  Notwithstanding any "license" to use any equipment by any DD Acquiring Agency, each

counterparty to any such agreement may continue to invoice the Debtor and the Debtor shall continue to pay any such amounts actually due and payable.

9.   The 315 Objection, together with any response and/or evidence that may be submitted by the Debtor and/or AHRC-NYC, will be heard by this Court at a hearing to be held on June 25, 2015 at 10:00 a.m. if the issues are not resolved consensually before then.

10.   The Transfer Agreements, the Ancillary Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not (i) materially change the terms of such agreement, (ii) modify the express terms of this Order, and (iii) have a material adverse effect on the Debtor's estate, and the Debtor shall provide reasonable advance notice of any such modification to counsel for the Creditors' Committee, counsel to DASNY and the Office of the United States Trustee.

11.   As provided by Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon its entry, and the transactions approved by this Order may close immediately upon entry of this Order, notwithstanding any otherwise applicable waiting periods.

12. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order. To the extent there are any inconsistencies between the terms of this Order and any of the Transfer Agreements or the Ancillary Agreements, the terms of this Order shall control.



**Dated: Central Islip, New York**
**May 29, 2015**

**Robert E. Grossman**
**United States Bankruptcy Judge**

3188118v.8