GARFUNKEL WILD, P.C.
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Telefax: (516) 466-5964
Burton S. Weston
Afsheen A Shah
*Counsel for Debtor*
*And Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND GUIDANCE        Chapter 11
SERVICE INC. d/b/a FEGS,                                Case No. 15-71074 (REG)

        Debtor(s).
-----------------------------------------------------------x

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF CERTAIN VEHICLES FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363

Federation Employment and Guidance Service, Inc. d/b/a F.E.G.S. ("**FEGS**" or the "**Debtor**"), as debtor and debtor-in-possession in this Chapter 11 case (the "**Chapter 11 Case**") by and through its proposed attorneys, Garfunkel Wild, P.C., respectfully submits this motion for the entry of an order, substantially in the form of Exhibit A hereto, authorizing the sale of certain vehicles, as set forth on Exhibit B hereto, to the Jewish Board of Family and Children's Services ("**JBFCS**" or "**Buyer**") free and clear of all liens, claims and encumbrances, security interests and other interests, with such liens, claims and interests, if any, to attach to the proceeds of sale to the extent of their validity and priority. In support of the Motion, the Debtor relies in part upon the Affidavit of Kristin Woodlock pursuant to Local Rule 1007-4 and in Support of First Day Motions filed on the Petition Date (the "**Woodlock Affidavit**"), and respectfully states the following:

3300635v.1

### A. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) and 363(b), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 6004-1 and 9006-1 of the Local Rules of the Bankruptcy Court for the Eastern District of New York (the "**Local Rules**"), and General Order 557 of the Bankruptcy Court for the Eastern District of New York ("**General Order 557**").

### B. BACKGROUND

3. On March 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and/or continue to manage its property as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

4. On March 31, 2015, the Office of the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors ("**Creditors Committee**"). The Committee proposes to retain Pachulski Stang Ziehl & Jones, LLP as its counsel.

### C. THE DEBTOR'S HISTORY AND ITS BUSINESS

5. Established in 1934 amidst the Great Depression, FEGS is a not-for-profit health and human services organization which provided a broad range of health and social services to more than 120,000 individuals annually in the areas of behavioral health, disabilities, housing,

3300635v.1

home care, employment/workforce, education, youth and family services. The agency utilized resources from both the private and public sectors, integrating services from a wide array of professional disciplines throughout the organization, including subsidiary corporations in the areas of information technology, human resources, health care management, residential, and home care services. Its significant infrastructure was designed to allow the Debtor to bring innovation, capacity, resiliency and integrated care platforms across the FEGS organization for the benefit of its funders, donors, partners, and the many clients it serves.

6. Since its founding, the Debtor has been strongly committed to providing caring, compassionate and high quality health and social services in response to the critical needs of individuals facing complex challenges and in doing so, enabling such individuals to lead more independent and successful lives. During the past eight decades, the Debtor has delivered a comprehensive network of programs and services to the members of its community and improved the lives of millions of New Yorkers with a skilled and committed workforce. Examples of some of the major programs operated by FEGS include the Wellness, Comprehensive Assessment, Rehabilitation and Employment Program (WeCare), Back To Work, CareerFirsts, Workforce1 and Connect to Care. FEGS also administers complex residential and support programs for the developmentally disabled and a comprehensive portfolio of behavioral treatment and residential programs for the mentally ill, in the New York Metropolitan and Long Island region.

### D. THE VEHICLES

7. In the ordinary course of its business and in connection with the operation of its programs, the Debtor maintained certain vehicles (the "**Vehicles**"), as set forth on Exhibit B, which it utilized for, among other things, providing services and transport to its behavioral

3300635v.1

program clients. By Order dated May 29, 2015 [Docket No. 254], the Debtor was authorized to transfer its portfolio of behavioral health programs and certain related property to JBFCS. The Debtor has since ceased providing all further services pertaining to the behavioral health programs which have been taken over by JBFCS.

8. In connection with the transfer of the programs and its continued operation thereof, JBFCS has indicated that it would like to purchase the Vehicles. To that end, JBFCS has submitted an offer to the Debtor for the Vehicles in the amount of [$177,327]. The Debtor has researched and believes the aggregate value of the Vehicles is consistent with the amount offered based on the blue book values indicated for the Vehicles. The Debtor thus believes the proposed offer is fair and reasonable under the circumstances and in the best interest of the Debtor's estate and its creditors. The sale of the Vehicles to JBFCS will facilitate continuity of services while allowing the Debtor to quickly and efficiently dispose of the Vehicles for maximum value and avoid continuing maintenance and insurance costs.

9. The terms of the proposed sale further provide that the Vehicles shall be sold on an "as is, where is" basis, without any warranties or representations of any kind, whether express or implied, including without limitation, any warranty of marketability, usability or fitness for any purpose by the Debtor. Although the Debtor does not believe there are any existing liens against the Vehicles, pursuant to 11 U.S.C. § 363, the Vehicles shall be sold free and clear of all liens, encumbrances or interests that may exist as as against the Vehicles, with any such liens, encumbrances and interests attaching to the proceeds of the sale, in the same order, rank, validity and priority as now exists on the Vehicles.

## RELIEF REQUESTED

10. By this Motion, the Debtor is seeking to sell the Vehicles to JBFCS for a purchase price of [$177,327], subject to the approval of this Court. The proposed sale is within applicable law. Specifically, a sound business reason exists for the sale.

11. Section 363(b) of the Bankruptcy Code governs the sale of assets outside the ordinary course of business. Section 363(b)(1) provides, in relevant part, that a debtor in possession may, after notice and hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. § 363 (b)(1) and (f).

12. Under applicable case law, a transaction must represent a reasonable exercise of business judgment on the part of the debtor in possession to be approved under section 363(b) of the Bankruptcy Code. See, e.g., In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 772 F.2d 1063, 1071 (2d Cir. 1983); In re Adelphia Communications Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). See also In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993), quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).

13. Further, the terms of such sale are generally within the sound discretion of the Debtor. See In re Ionosphere Clubs, Inc., 100 B.R. 670 (Bankr.S.D.N.Y. 1989) (sale of Debtors' airline shuttle assets approved where representing the exercise of independent good faith and

3300635v.1

non-coerced business judgment by the Debtors, the Debtors articulated a compelling business reason for the sale and represented fair value).

14. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code. See, e.g., Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.), 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); In re Condere Corp., 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met); In re Wieboldt Stores, Inc., 92 B.R. 309 (N.D. Ill. 1988) (affirming the right of a chapter 11 debtor to transfer assets by private sale). Cf. In re Embrace Systems Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (holding that a private sale of a chapter 11 debtor's assets is appropriate if all provisions of section 363 are followed, the bid is fair and the sale is in the best interests of the estate and its creditors).

15. In addition, Bankruptcy Code section 105(a) grants the Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." In re Flores, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003).

16. The Debtor submits that under the facts and circumstances of this case, compelling business reasons exists which favor the private sale of the Vehicles to JBFCS. As set

forth above, the Debtor has transferred its behavioral health programs to JBFCS, who will be continuing to provide vital services under the programs to the Debtor's former clients. In light of the transfer of the programs, the Debtor no longer requires use of the Vehicles which had been utilized solely in connection with the programs. As the transferee of the programs, JBFCS has a need for the Vehicles and is best positioned to effectively use the Vehicles to seamlessly provide continued vital services and transportation to the Debtor's former clients. Moreover, by conducting a private sale, the Debtor can avoid the unnecessary incurrence of costs and commissions related to the advertising and marketing of the Vehicles.

17. The Debtor has determined that the maximum retail Blue Book value that could be obtained for the Vehicles is [$197,030]. JBFCS has offered to purchase the Vehicles for the amount of [$177,327], which amount is consistent with the Blue Book value, less a 10% reduction to account for any transfer related costs. Further, given the transfer of the Debtor's behavioral health programs, there is no benefit to the Debtor in retaining the Vehicles. To the contrary, by continuing to maintain the Vehicles the Debtor is incurring additional and unnecessary costs related to the maintenance and preservation of the Vehicles which can be alleviated through the sale. In addition, any delay in the sale of the Vehicles will only lead to a further deterioration in their value, potentially reducing the total amount that can ultimately be recovered for the estate.

18. Accordingly, the Debtor respectfully submits that the sale of the Vehicles to JBFCS is in the best interest of the Debtor's Estate and its creditors and represents the exercise of the Debtor's sound business judgment.

## MOTION PRACTICE

19. No previous request for the relief sought herein has been made to this or any other court.

## WAIVER OF RULE 6004 REQUIREMENTS

20. In light of JBFCS's immediate need for the continued use of the Vehicles, the Debtor proposes that the 14 day stay period of an order authorizing the use, sale or lease of the Debtor's property imposed by Bankruptcy Rule 6004 should be waived. The purpose of Bankruptcy Rule 6004 is to provide sufficient time for an objecting party to appeal before the order takes effect. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). The likelihood of a party in interest objecting to the relief sought herein is negligible while the benefits to the estate and all stakeholders are measurable. Accordingly, the Court should waive the 14 day stay period provided for in Bankruptcy Rule 6004(h).

**WHEREFORE** the Debtor respectfully requests that the Court enter an order substantially similar to the proposed order, attached hereto as Exhibit A, granting the relief

3300635v.1

requested herein, and granting the Debtor such other and further relief as is just and proper.

Dated: June 24, 2015
Great Neck, New York

GARFUNKEL WILD, P.C.

By: _____
Burton S. Weston
Afsheen A. Shah
Adam Berkowitz
111 Great Neck Road
Great Neck, NY 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964

*Counsel for the Debtor
and Debtor in Possession*

3300635v.1