GARFUNKEL WILD, P.C.
111 Great Neck Road
Great Neck, New York 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964
Burton S. Weston
Afsheen A. Shah
Adam T. Berkowitz

*Counsel for Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND                    Chapter 11
GUIDANCE SERVICE, INC. d/b/a FEGS, [1]        Case No. 15-71074 (REG)

                                   Debtor.
-----------------------------------------------------------x

**MOTION OF DEBTOR PURSUANT TO 11 U.S.C. § 1121(D) TO**
**EXTEND EXCLUSIVITY PERIODS IN WHICH THE DEBTOR MAY**
**FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO**

Federation Employment and Guidance Service, Inc. d/b/a FEGS ("**FEGS**"), as debtor and debtor-in-possession (the "**Debtor**" or "**FEGS**") in this chapter 11 case (the "**Chapter 11 Case**"), hereby files this Motion (the "**Motion**") for the entry of an Order, substantially in the form attached hereto as Exhibit A, pursuant to 11 U.S.C. § 1121(d) extending the exclusivity periods in which only the Debtor may file a Chapter 11 plan and solicit acceptances thereto, to November 13, 2015 and January 12, 2016 respectively. In support of the Motion, the Debtor respectfully represents as follows:

**SUMMARY OF RELIEF REQUESTED**

1.      By this Motion, the Debtor seeks the entry of an Order, pursuant to Section 1121(d) of Title 11, United States Code (the "Bankruptcy Code"), extending for one hundred twenty (120)

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.

3398047v.1

days both: (i) the exclusive period within which only the Debtor may file a Chapter 11 plan (the "**Exclusive Filing Period**") through and including November 13, 2015, and (ii) the exclusive period within which only the Debtor may solicit acceptances to any such plan (the "**Exclusive Solicitation Period**," which, together with the Exclusive Filing Period, are collectively referred to as the "**Exclusivity Periods**") through and including January 12, 2016.

2. The filing of a plan of reorganization would be premature at this time. As the Court is aware, the Debtor's efforts have been focused on the safe transfer of hundreds of programs for persons with developmental disabilities and other mental health issues. Having recently completed the transfer of those programs in what has become known as phase 1 of the Debtor's bifurcated process, the Debtor, together with the official committee of unsecured creditors (the "**Committee**") appointed in this case, certain creditors with security interests in the Debtor's real property, various state agencies and the new providers running the Debtor's former programs, recently embarked on phase 2 which involves the ultimate disposition of the Debtor's real estate holdings. While that phase of the process is still in its earliest stages, the various constituencies are attempting to work together in in order to yield results beneficial to all parties in interest. Thus, the Debtor needs additional time for phase 2 of the process to unfold in order to effectively evaluate its options and, thereafter, negotiate and file a Chapter 11 plan capable of being confirmed and bringing this case to a successful conclusion. This is the Debtor's first request for an extension of the Exclusivity Periods. The Debtor submits that the extension is reasonable under the circumstances.

## JURISDICTION

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On March 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its assets and continues to manage its businesses as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On March 31, 2015, the United States Trustee for the Eastern District of New York (the "**U.S. Trustee**") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee has engaged Pachulski Stang Ziehl & Jones LLP as its counsel. No trustee or examiner has yet been appointed in these cases.

6. The factual background relating to the Debtor's commencement of this Chapter 11 case, including its business operations, capital and debt structure, and the need to transfer all of its programs and sell substantially all of its assets, is set forth in detail in the *Affidavit of Kristin Woodlock Pursuant to Local Rule 1007 and in Support of First Day Motions* (the "**Woodlock Affidavit**"), filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

7. The Debtor requests an extension of the Exclusive Filing Period pursuant to section 1121(d) of the Bankruptcy Code, through and including November 13, 2015, and the Exclusive

Solicitation Period through and including January 12, 2016, without prejudice to the Debtor's rights to seek additional extensions of such periods as needed.

8.  Section 1121 of the Bankruptcy Code provides a debtor with the exclusive right to file a Chapter 11 plan for an initial period of 120 days after the commencement of a chapter 11 case. *See* 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120 day Exclusive Filing Period, it then has an exclusive period of 180 days from the commencement date to solicit acceptances for its plan. During these exclusive periods, no other party in interest may file a competing chapter 11 plan. *See* 11 U.S.C. § 1121(c)(3). The Debtor's Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on July 16, 2015 and September 14, 2015, respectively.

9.  An extension of the Exclusivity Periods is warranted and appropriate herein given the size and complexity of this case. The relief sought herein will allow the Debtor to continue focusing on phase 2 of the bifurcated process in the hopes of reaching a consensual arrangement regarding the disposition of the Debtor's substantial real estate assets. Through the requested extension the Debtor will be afforded a full and fair opportunity, as contemplated by the Bankruptcy Code, to develop a viable, comprehensive and fair Chapter 11 plan, in conjunction with the Committee, the state agencies, and other relevant parties in these cases. The extension will permit sufficient time to negotiate, propose and solicit acceptances for a plan which will, in light of the Debtor's not-for-profit mission, maximize value and benefit the interests of all creditors and parties in interest.

## Legal Basis for Relief Requested

10. Pursuant to section 1121(d) of the Bankruptcy Code,

> "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."

11 U.S.C. § 1121(d).

11. However, the 120-day period "may not be extended beyond a date that is 18 months after the [commencement] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [commencement] date." 11 U.S.C. § 1121(d)(2).

12. The Exclusivity Periods established by Congress were incorporated in the Bankruptcy Code to afford a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. Indeed, the primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. Given the size and complexity of this case, the timing of the program transfers and the process outlined for the disposition of the Debtor's real property assets, the initial 120- and 180-day Exclusivity Periods provided under the Bankruptcy Code provide an unrealistic time frame for the filing of a viable Chapter 11 plan. To terminate the Exclusivity Periods in this Chapter 11 case before the Debtor has sufficient opportunity to complete a process with respect to the real property and negotiate a consensual plan with all creditor constituencies will effectively deprive the Debtor of its entitlement to a full and fair opportunity to formulate and prosecute a viable Chapter 11 plan.

13. Section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusivity Periods "for cause" where the initial 120-day and 180-day periods provided for in the Bankruptcy Code prove to be an unrealistic time frame for proposal and solicitation of a plan.

Although the term "cause" is not defined in the statute, legislative history indicates that it is a flexible standard intended to balance competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. This flexibility is intended to give Bankruptcy Courts significant discretion in protecting a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest. It also provides debtors with an adequate opportunity to negotiate with creditors an effective plan of reorganization. *See In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Texaco, Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1987). Here, ample cause exists to extend the Exclusivity Periods.

14. In determining whether cause exists to extend the Exclusivity Periods, courts may consider a variety of factors to assess the totality of the circumstances in each case. *See In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 687 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); see also *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus.*, 87 B.R. at 834 (identifying factors used by courts to determine whether cause exists to extend exclusivity).

15. Among the factors utilized by courts to determine whether "cause" exists for the purpose of extending a debtor's exclusive periods include:

(a) the size and complexity of the debtor's case;

(b)     the existence of good faith progress towards reorganization;

(c)     a finding that the debtor is not seeking to extend exclusivity merely for the purpose of pressuring creditors to consent to the debtor's reorganization demands;

(d)     the existence of an unresolved contingency; and

(e)     the fact that the debtor is paying its bills as they become due.

*Adelphia Commc'ns*, 352 B.R. at 587 (noting that factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also Borders*, 460 B.R. at 822 (evaluating the factors set forth in Adelphia to hold that debtor established cause to extend exclusivity); *McLean Indus. Inc.*, 87 B.R. at 834); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr.D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the factors). The exercise of the Court's discretion is not simply a check-off process but is based on the totality of circumstances. In addition, the above factors are not exclusive bases for the exercise of such discretion.

16.     Other courts have examined whether the debtor has sufficient time to negotiate a chapter 11 plan and prepare a disclosure statement containing adequate information as required by the Bankruptcy Code. Also considered is the extent of any harm to the debtor's creditors. *See, e.g. In re Adelphia Communications Corp.*, 336 B.R. at 674-75 (Bankr.S.D.N.Y. 2006) (considering harm to creditors as well as factors mentioned in *McLean*); *In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr.S.D.N.Y. 1992); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (Bankr. E.D.N.Y. 1989).

**Ample Cause Exists for an Extension of the Exclusive Periods**

17.     The Debtor submits that adequate cause exists for an extension of the Exclusivity Periods under the aforementioned standards. The Debtor's case is relatively complex and involves an interplay of the Debtor's not-for-profit mission, various state agencies, numerous secured and

unsecured creditors and the interests of thousands of former clients with developmental and other mental disabilities. Additionally, the intent behind the Debtor's request for an extension is not improper in any manner and is instead designed to provide the Debtor with sufficient time and opportunity to negotiate a consensual plan for the disposition of the Debtor's real property assets in light of the various competing interests set forth above. If successful, any such agreement would likely form the foundation upon which a Chapter 11 plan is ultimately built.

18. Moreover, given the time and energy the Debtor committed to the transfer of the client programs, the Debtor has not had the opportunity to address the multitude of other matters necessary to propose a viable plan, such as preliminary claims analysis.

19. As is evident, the nature and complexity of the Debtor's Chapter 11 case alone justifies granting the relief requested in this Motion. The number and intricacy of the tasks that must be completed and the diversity of interests which must be taken into account before formulating a Chapter 11 plan are far greater than what one encounters in ordinary for-profit Chapter 11 cases. The extension requested is reasonable under the circumstances and warranted since the Debtor must balance the dual requirements of maximizing the value of its estate with a concurrent duty to comply with their regulatory and not-for-profit obligations. Notwithstanding, additional factors also exist which favor the granting of the requested extension. The extensions are thus necessary and appropriate in order for the Debtors to have the opportunity contemplated by the Bankruptcy Code to propose a chapter 11 plan and solicit acceptances thereto.

20. Further, the extension sought by the Debtor in this Motion is reasonable when compared to the extensions granted to other Chapter 11 debtors by this and other courts in the Second Circuit. *See*, *e.g., In re Caritas Health Care, Inc., et al,* Case No. 09-40901 (CEC)

(Bankr. E.D.N.Y.)(numerous extensions granted extending the exclusive filing and solicitation periods); *In re The Brooklyn Hospital Center, et al,* Case No. 05-26990 (CEC) (Bankr. E.D.N.Y.) (numerous extensions granted extending the exclusive filing and solicitation periods by more than two years); *In re Our Lady of Mercy Medical Center, et al.,* Case No. 07-10609 (REG) (Bankr. S.D.N.Y.) (extensions totaling more than 18 months granted); *In re Episcopal Health Services, Inc.,* Case No. 99-23817 (JF) (Bankr. E.D.N.Y.) (multiple extensions granted extending exclusivity by more than twelve months); *In re Flushing Hospital and Medical Center,* Case No. 198-17475-260 (CJD) (Bankr. E.D.N.Y.) (multiple extensions granted extending exclusivity by more than fifteen months).

    (a)    **The Size and Complexity of these Cases Provides Sufficient Cause to Extend the Exclusivity Periods**

21. It is well established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusivity Periods. The legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor tor reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5963. Similarly, Courts have stated: "The large size of a debtor and the consequent difficulty in formulating a plan..for a huge debtor with complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.:" *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). As detailed above, the Debtor's cases, in addition to being large and complex, are further complicated by a regulatory overlay by virtue of their status as not-for-profit and healthcare institutions.

22. Additionally, as noted above, due to the underlying nature of the Debtor's businesses, their priority has been the safe and orderly transfer of all of its client programs while

9

3398047v.1

navigating the bankruptcy process. These actions are in addition to the substantial time devoted by the Debtor to the efficient administration of its estate and continued viability of operations. All of these factors warrant an extension of the Exclusivity Periods.

(b) **The Debtor is Not Seeking to Extend the Exclusive Period to Impose Undue Pressure Upon its Creditors to Accede to Their Demands**

23. This is the Debtor's first request for extensions of the Exclusivity Periods. The Debtor is not seeking this extension to artificially delay the conclusion of this Chapter 11 case or for the purposes of coercing creditor consent or for any other improper motive. Rather, the Debtor's desire is to maintain the status quo until such time as the Debtor has had an opportunity to effectuate phase 2 of the bifurcated process and, hopefully, negotiate a consensual process for the disposition of the Debtor's real property assets.

24. The requested extension of the Exclusivity Periods will not prejudice parties in interest. To the contrary, the time will be used to develop and build consensus for a feasible chapter 11 plan. A failure to extend the Exclusivity Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to afford the Debtor a meaningful and reasonable opportunity to negotiate with their economic stakeholders and propose a confirmable chapter 11 plan. Further, should the Exclusivity Periods not be extended at this time, any party in interest will be able to file a plan. This could result in an extreme waste of the resources of the estate in possibly dealing with multiple plans, resources which should more properly be devoted toward attempting to come to terms on a consensual plan with the Creditors' Committee and other significant constituents in these cases.

    (c)    **The Existence of Unresolved Contingencies**
            **Prevents the Filing of a Plan at the Present time**

25. Substantive discussions and negotiations relating to the proposed plan cannot be held until the second phase of the bifurcated process, dealing with the disposition of the Debtor's real property, has been completed. The outcome of that process will allow the Debtor to assess the extent of their available funds and resources with which to fund a proposed Chapter 11 plan. In addition, since the Debtor has not yet fully ascertained the universe of claims filed against its estate, many of which still remain unliquidated, the full extent of their outstanding pre-petition liabilities has not yet been determined.

    (d)    **The Debtors are Paying Their Debts as They Become Due**

26. The Debtor has been and is continuing to pay its vendor debts as and when they become due. The Debtor believes it has sufficient liquidity under to continue paying such obligations and intends to seek postpetition financing to ensure it will be able to continue to do so.

## CONCLUSION

27. As described above, the Exclusivity Periods are designed to provide a debtor with a full and fair opportunity to negotiate, develop, propose, confirm and consummate a Chapter 11 plan. The Debtor has been diligently working towards this goal while maintaining its relationships with its various creditor constituencies, staff, employees, state agencies and the clients which, until recently, relied on the Debtor for a panoply of vital services. While the Debtor has made substantial progress in responding to the exigent demands of these cases, the filing of a plan at the current time is neither viable nor feasible. However, the Debtor believes that by extending the Exclusivity Periods, they will be able to implement a viable plan with the consensus of their major

creditor constituencies. Indeed, the requested extension will allow the plan process to proceed in a rational and thoughtful manner while simultaneously maximizing value for all parties.

28. Given the foregoing, it is submitted that the extension of the Exclusivity Periods requested in this Motion is warranted and entirely consistent with the intent and purpose of the Bankruptcy Code. The extension will provide the Debtors with a meaningful opportunity to negotiate, propose, file and solicit acceptances for a Chapter 11 plan. Therefore, it is requested that the Exclusive Filing Period be extended through and including November 13, 2015 and the Exclusive Solicitation Period be extended through and including January 12, 2016.

## NOTICE

29. Notice of this Motion has been provided in accordance with the Final Administrative Order Establishing Case Management Procedures (the "**Case Management Order**"), entered on April 17, 2015. The Debtor submits that no other or further notice need be provided.

**WHEREFORE,** the Debtor respectfully requests that the relief requested herein be granted, that the Exclusivity Periods be extended and that the Court grant such other and further relief as is just and proper.

Dated: June 29, 2015
       Great Neck, New York

Respectfully submitted,

By: /s/ Adam T. Berkowitz_____
    Burton S. Weston
    Afsheen A. Shah
    Adam T. Berkowitz
    GARFUNKEL WILD, P.C.
    Counsel to the Debtor
    111 Great Neck Road
    Great Neck, New York 11021
    Telephone: (516) 393-2200
    Facsimile: (516) 466-5964