**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:
FEDERATION EMPLOYMENT AND
GUIDANCE SERVICE, INC. D/B/A FEGS,

Debtor,

LOCAL 215, DISTRICT COUNCIL 1707,
CSAEU, AFSCME, AFL-CIO,
Plaintiff,
      -against-

FEDERATION     EMPLOYMENT     AND
GUIDANCE SERVICE, INC. D/B/A FEGS,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 15-71074 (REG)

Chapter 11

Adv. Proc. No. 15-_____

**Complaint**

Plaintiff Local 215, District Council 1707, CSAEU, AFSCME, AFL-CIO ("Plaintiff" or

"Union") alleges as follows:

**Nature of the Action**

1.    Plaintiff Union brings this action on behalf of all employees it represents and

represented as employees of Defendant Federation Employment and Guidance Service, Inc. d/b/a

FEGS ("FEGS") who were terminated without cause at all FEGS locations as part of the mass

layoffs of all Union and most non-Union employees which were initiated prior to FEGS's

bankruptcy filing on March 18, 2015. Defendant provided neither sixty (60) days advance

written notice of the employees' terminations, as required by the Worker Adjustment and

Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, nor ninety (90) days

advance written notice of their terminations, as required by the New York Worker Adjustment

1

Retraining Notification Act ("NY WARN Act"), N.Y. Labor Law § 860 *et seq.* Plaintiff now files this action based on the voluntary petition filed by the Defendant Debtor.

2.    Plaintiff respectfully seeks to recover up to 60 days' wages and benefits for each Union-represented employee for each day of the violation as to that employee of 29 U.S.C. §§ 2104(a)(1), (6), and up to 60 days wages' and benefits for each Union-represented employee for each day of the violation as to that employee of N.Y. Labor Law § 860-(g)(2) and § 860-(g)(7). Plaintiff's claim is entitled to partial administrative expense status pursuant to the United States Bankruptcy Code, 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2), and partial, or alternatively, full priority status, under 11 U.S.C. § 507(a)(4) and (5), up to the $12,475.00 priority cap, with the balance, if any, being a general unsecured claim.

3.    The Union estimates that damages total at least $2,594,273.77 due to FEGS's statutory violations.

## Jurisdiction and Venue

4.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331, 1334(b), and 29 U.S.C. § 2104(a)(5).

5.    The Court has jurisdiction over the NY WARN Act claim pursuant to 28 U.S.C. §1367.

6.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

7.    This adversary proceeding relates to *In re: Federation Employment and Guidance Service, Inc. d/b/a FEGS*, No. 15-71074 (REG), where the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. That case is pending in the United States Bankruptcy Court for the Eastern District of New York in Central Islip, New York, before the Hon. Robert E. Grossman.

8.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a), and 29 U.S.C. § 2104(a)(5).

9.      FEGS has conducted business in this judicial district for many years, and chose to file its bankruptcy petition in this district.

**The Parties**

10.     The Union is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), with its principal place of business located at 420 West 45th Street, New York, New York. The Union is, and at all times material herein, has been the exclusive collective bargaining representative of certain employees ("employees," "Union-represented employees") formerly employed by the Defendant. The Union is, and at all times material herein has been the "representative" of those workers as that term is defined in the WARN Act, 29 U.S.C. § 2101(4), and NY WARN Act, N.Y. Labor Law § 860-(a)(7).

11.     FEGS was, and has been at all times relevant hereto, a not-for-profit health and human services organization which maintains its principal offices at 315 Hudson Street, New York, New York. FEGS was, at all times relevant hereto, an "employer" as that term is defined in the WARN Act, 29 U.S.C. § 2101(a)(1), and NY WARN Act, N.Y. Labor Law § 860-(a)(3).

12.     For many decades, FEGS operated health and human services programs funded by various federal, state and local governmental agencies at over 350 locations throughout metropolitan New York and Long Island.

13.     At all times material herein, there were a total of up to approximately 1,400 employees employed by FEGS working in various FEGS programs who were represented by the Union.

14.    This adversary proceeding is brought by the Union as the duly-authorized bargaining representative of the employees aggrieved pursuant to 29 U.S.C. § 2104(a)(5) and N.Y. Labor Law § 860-(g)(7).

### Statement of Facts

15.    Plaintiff and Defendant are parties to a Collective Bargaining Agreement ("CBA," "Agreement"). Pursuant to Article I of the Agreement, the Union is the exclusive collective bargaining representative of certain employees formerly employed by FEGS. Around July 2014, the collective bargaining agreement was renewed for an additional term running until June 30, 2017. The CBA together with its two Memoranda of Understanding are attached hereto as Exhibit "A."

16.    Upon information and belief, prior to filing for bankruptcy, Defendant and its employees provided a broad range of health and social services to more than 120,000 individuals annually in the areas of behavioral health, disabilities, housing, home care, employment/ workforce, education, and youth and family services.

17.    Examples of some of the major programs operated by Defendant include WeCARE, which stands for Wellness, Comprehensive Assessment, Rehabilitation and Employment Program, Back to Work, and education and youth services for at risk youth. Upon information and belief, Defendant also administered complex residential and support programs for the developmentally disabled and a comprehensive portfolio of behavioral treatment and residential programs for the mentally ill, in the New York metropolitan and Long Island region.

18.    Upon information and belief, Defendant's programs were funded and overseen by various federal, state and local governmental agencies, including, in part, the New York State Office of Mental Health ("OMH"), New York State Office for People with Developmental

Disabilities ("OPWDD"), the New York City Human Resources Administration ("HRA"), the Department of Education ("DOE"), and the Department of Youth and Community Development ("DYCD").

19.    Upon information and belief, some programs operated out of a single site, while others were operated from multiple physical locations (collectively "facilities"), serving different communities around the city. For example, Back to Work in the Bronx operated out of a location at 412 East 147th Street, Bronx, New York, which employed approximately 53 employees who were members of the Union.

20.    OPWDD oversees the coordination of services for a population of developmentally disabled individuals. Defendant provided such services pursuant to contracts with OPWDD until June 1, 2015.

21.    Upon information and belief, HRA oversees WeCARE and Back to Work programs, which provide medical assessment, rehabilitation and employment services for the mentally ill population. Upon information and belief, until April 1, 2015, Defendant held contracts with HRA to operate WeCARE and Back to Work programs at certain of its facilities.

22.    On or about January 20, 2015, Defendant provided Notice to Plaintiff as the representative of approximately 700 Union-represented employees working in OPWDD programs, WeCARE programs, and Back to Work programs that those programs would be permanently shutting down, and the employees terminated. A copy of the notice provided by Defendant to the Plaintiff as the representative of unionized employees working in those programs is attached as Exhibit "B."

23.    Upon information and belief, on or about February 20, 2015, FEGS provided notices to the more than 700 Union-represented employees working in all other FEGS

programs—meaning those that were not OPWDD, WeCARE, or Back to Work—that the programs would be permanently shutting down, and the employees would be terminated. A copy of the Notice provided by FEGS is attached as Exhibit "C." (Together with Exhibit B: "The WARN Notices.")

24.    The Notices provided by Defendant contained projected termination dates. However, FEGS laid off employees starting within a few days of the Notices, and continuing through May 31, 2015. The employees were terminated without cause.

25.    Upon information and belief, FEGS completed the transfer and shut down of all programs by June 1, 2015, permanently ceasing all operations at locations where FEGS ran programs and/or provided services. Upon information and belief, Defendant terminated virtually all of its employees at all of its locations prior to June 1, 2015 without cause, including all employees represented by the Union.

26.    Upon information and belief, FEGS's losses were $19.4 million in fiscal year 2014.

27.    Upon information and belief, FEGS knew around November 2014, four months prior to its bankruptcy filing, that the organization's losses were monumental and that cash resources were rapidly depleting.

28.    Upon information and belief, around November 2014 or December 2014, representatives from FEGS informed New York City government officials that it was shutting down and declaring bankruptcy.

29.    Upon information and belief, around November 2014 or December 2014, New York City government officials insisted on taking more time to move programs funded by New York City agencies, such as HRA. FEGS's officials, however, insisted on a faster timetable.

30.     Upon information and belief, around November 2014 or December 2014, New York State government officials insisted on taking more time to move programs funded by New York State agencies, such as OPWDD and OMH. FEGS's officials, however, insisted on a faster timetable.

31.     Upon information and belief, FEGS was aware that shutdowns of all its programs were likely even before WARN Act or NY WARN Act notices were sent.

32.     Since the permanent shutdown of FEGS's programs resulted in an employment loss of more than fifty full-time employees within a thirty (30) day period (for example, approximately 377 union-represented employees were terminated in the month of March 2015 alone), the shutdown constituted a plant closing as defined in the WARN Act, 29 U.S.C. § 2101(a)(2).

33.     Since the permanent shutdown of FEGS's programs resulted in an employment loss of more than 25 full-time employees within a thirty (30) day period (for example, approximately 883 union-represented employees were terminated in the month of April 2015 alone), the shutdown constituted a plant closing as defined in the NY WARN Act, N.Y. Labor Law § 860-(a)(6).

34.     The permanent shutdown of FEGS's programs also constituted mass layoffs as defined in the WARN Act, 29 U.S.C. § 2101(a)(3), and in the NY WARN Act, N.Y. Labor Law § 860-(a)(4).

35.     The Defendant failed to provide certain Union-represented employees working in the OPWDD, WeCARE and Back to Work programs with sixty days advance notice prior to their terminations of those programs' closure, as required by the WARN Act, and with ninety

days advance notice prior to their terminations of those programs' closures as required by the NY WARN Act.

36.     The Defendant also failed to provide all other Union-represented employees with sixty days advance notice prior to their terminations of the closure and permanent shutdown of all other FEGS programs, as required by the WARN Act, and with ninety days advance notice prior to their termination of these program closures as required by the NY WARN Act.

37.     Defendant's sudden closure of its programs and failure to provide required notice to Plaintiff or the employees had a severe financial impact on the employees.

38.     Defendant failed to provide a statement in the "WARN" Notices offering any explanation for why it was providing less than the required notice pursuant to 29 U.S.C. § 2102(b)(2) and N.Y. Labor Law § 860-(c)(2).

## AS AND FOR A FIRST CAUSE OF ACTION

39.     The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 38 above, as if fully set forth herein.

40.     At all relevant times, Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

41.     At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a) and continued to operate its programs until it decided to order a mass layoff and/or plant closing at each of its locations.

42.     At all relevant times, the Union was the "representative" of the Union-represented employees pursuant to 29 U.S.C. § 2101(a)(4).

43.    At all relevant times, the Union-represented employees were employees of Defendant.

44.    On or about January 20, 2015 and February 20, 2015, the Defendant ordered mass layoffs and/or plant closings at each of its locations, as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3).

45.    The mass layoffs and/or plant closings at the locations resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least 1,400 of Defendant's Employees represented by Plaintiff.

46.    The Union-represented employees were terminated by Defendant without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendant at its locations.

47.    The Union-represented employees are "affected employees" of Defendant, within the meaning of 29 U.S.C. § 2101(a)(5).

48.    Defendant was required by the WARN Act to give to the Union-represented employees or to Plaintiff, their representative, at least 60 days advance written notice of their terminations.

49.    Defendant failed to give to the Union-represented employees or to Plaintiff, their representative, written notice that complied with the requirements of the WARN Act.

50.    Defendant failed to pay the Union-represented employees their respective wages and benefits for a period of time up to 60 days following their respective terminations.

51.    The Union-represented employees are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2104(a)(7).

52.     Since the Union-represented employees seek back pay and welfare and pension benefits pursuant to Article XIII of the CBA attributable to a period of time after the filing of the Debtor's bankruptcy petition and which arose as the result of the Debtor's violation of federal laws, the Union-represented employees' claims against Defendant are entitled to second priority administrative expense status pursuant to 11 U.S.C. § 502(a)(7) during that period in addition to fourth priority status for their claims attributable to the period of 180 days prior to the bankruptcy filing under 11 U.S.C. § 507(a)(4) and (5).

53.     The relief sought in this proceeding is equitable in nature.

54.     The Defendant is liable to each of the aggrieved Union-represented employees for wages for each day of the violation as to them individually, as well as benefits and contributions due, in an amount to be determined, under applicable employee welfare and pension benefit plans pursuant to Article XIII of the CBA and the value of medical expenses incurred by each employee that would have been covered by the FEGS health insurance plan, also in an amount to be determined.

55.     Attached hereto as Exhibit "D" is the summary of lost wage damages owed to aggrieved employees based on their final regular rate of wages, as well as information showing date of hire, date of termination, and notice entitlement. In addition to wages it owes employees, Defendants owe employees an unliquidated amount in lost benefits.

56.     Under the WARN Act, Plaintiff estimates that Defendant owes at least $308,134.61 for employees terminated on or after March 18, 2015, which is a second priority (administrative expense) pursuant to 11 U.S.C. § 507(a)(2). Employees terminated before March 18, 2015 are owed at least $735,025.86 in wage damages, a fourth priority pursuant to 11 U.S.C. § 507(a)(4), and/or a general unsecured claim.

## AS AND FOR A SECOND CAUSE OF ACTION

57.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 above, as if fully set forth herein.

58.     At all relevant times, Defendant was an "employer" under the NY WARN Act, N.Y. Labor Law § 860-(a)(3), and continued to operate as a business until it decided to order a mass layoff or plant closing at its locations as defined by N.Y. Labor Law §§ 860-(a)(4), and (6).

59.     At all relevant times, Plaintiff was the "representative" of the Union-represented employees pursuant to N.Y. Labor Law § 860-(a)(7).

60.     On or about January 20, 2015 and February 20, 2015, the Defendant ordered a mass layoff and/or plant closing at its locations as defined by N.Y. Labor Law §§ 860-(a)(4), (6).

61.     The Union-represented employees suffered a termination of employment as defined by N.Y. Labor Law §§ 860-(a)(2)(a) and (b), having been terminated by Defendant without cause on their part, and are considered "affected employees" as that term is defined at N.Y. Labor Law § 860-(a)(1).

62.     Defendant was required by the NY WARN Act to give to the Union-represented employees or to Plaintiff, their representative, at least 90 days advance written notice of their terminations pursuant to N.Y. Labor Law § 860-(b).

63.     Defendant failed to give to the Union-represented employees or to Plaintiff, their representative, written notice that complied with the requirements of the NY WARN Act.

64.     Defendant failed to pay the Union-represented employees their respective wages and benefits for a period of time of up to 60 days following their respective terminations.

65.     The Union-represented employees are "aggrieved employees" of the Defendant as that term is defined in N.Y. Labor Law § 860-g(7).

66.    The relief sought in this proceeding is equitable in nature.

67.    The Defendant is liable to each of the aggrieved Union-represented employees for wages for each day of the violation as to that employee, as well as benefit contributions due, in an amount to be determined, under welfare and pension benefit plans contained in Article XIII of the CBA and the value of medical expenses incurred by each employee that would have been covered by the FEGS health insurance plan, also in an amount to be determined. N.Y. Labor Law § 860-(g)(1)(b).

68.    Attached hereto as Exhibit "D" is the summary of lost wage damages owed to aggrieved employees based on their final regular rate of wages, as well as information showing date of hire, date of termination, and notice entitlement. In addition to wages it owes employees, Defendants owe employees an unliquidated amount in benefits.

69.    Under the NY WARN Act, employees are owed NY WARN Act wage damages less any damages that apply from the federal WARN Act. N.Y. Labor Law § 860-(g)(5). For employees terminated on or after March 18, 2015, Plaintiff estimates that Defendant owes employees at least $1,282,209.80 in damages, which is a second priority (administrative expense) pursuant to 11 U.S.C. § 507(a)(2). The federal WARN Act damages for employees terminated on or after March 18, 2015 are at least $308,134.61. Accordingly, the net amount due employees terminated post-petition, and afforded administrative expense priority pursuant to 11 U.S.C. § 507(a)(2), is at least $974,075.19.

70.    For employees terminated before March 18, 2015, Plaintiff estimates that Defendant owes employees at least $1,312,063.97 in wage damages, which is a fourth priority claim pursuant to 11 U.S.C. § 507(a)(4). The federal WARN Act damages for employees terminated before March 18, 2015 are at least $735,025.86. Accordingly, the net amount in wage

damages due employees terminated post-petition, and afforded fourth priority status pursuant to 11 U.S.C. § 507(a)(4), is at least $577,038.11.

## PRAYER FOR RELIEF

Plaintiff requests the following relief against Defendant on behalf of its members who are affected and aggrieved employees under the WARN Act and affected and aggrieved employees under the NY WARN Act:

A.    Enter judgment against Defendant awarding a first priority administrative expense claim pursuant to 11 U.S.C.§ 503(b)(1)(A) in favor of each of the aggrieved employees represented by Plaintiff for their wages and corresponding benefits under the applicable employee benefit plans for each day in which the Defendant was in violation of the WARN Act with respect to such aggrieved employees as required by 29 U.S.C. § 2102 to the extent that employees were terminated on or after March 18, 2015, the date of FEGS's bankruptcy petition in the amount of no less than $308,134.61.

B.    Enter judgment against Defendant awarding a first priority administrative expense claim pursuant to 11 U.S.C.§ 503(b)(1)(A) in favor of each of the aggrieved employees represented by Plaintiff for their wages and corresponding benefits under the applicable employee benefit plans for each day in which the Defendant was in violation of the NY WARN Act with respect to such aggrieved employees as required by N.Y. Labor Law § 860-(b) to the extent that employees were terminated on or after March 18, 2015, the date of FEGS's bankruptcy petition in the amount of no less than $974,075.19

C.    Enter judgment against Defendant awarding a fourth priority claim pursuant to 11 U.S.C.§ 507(a)(4) up to the statutory cap of $12,475.00 and/or as a general unsecured claim in favor of each of the aggrieved employees represented by Plaintiff for their wages and

corresponding benefits under the applicable employee benefit plans for each day in which the Defendant was in violation of the WARN Act with respect to such aggrieved employees as required by 29 U.S.C. § 2102 to the extent that employees were terminated prior to March 18, 2015, the date of FEGS's bankruptcy petition in the amount of no less than $735,025.86.

D.    Enter judgment against Defendant awarding a fourth priority claim pursuant to 11 U.S.C.§ 507(a)(4) up to the statutory cap of $12,475 and/or as a general unsecured claim in favor of each of the aggrieved employees represented by the Union for their wages and corresponding benefits under the applicable employee benefit plans pursuant to 11 U.S.C. § 507(a)(5) for each day in which the Defendant was in violation of the NY WARN Act with respect to such aggrieved employees as required by N.Y. Labor Law § 860-(b) to the extent that employees were terminated prior to March 18, 2015, the date of FEGS's bankruptcy petition, in the amount of no less than $577,038.11.

E.    Enter judgement against Defendant awarding welfare and pension benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(B)), N.Y. Labor Law § 860-(g)(1)(b) and afforded proper priority as per 11  U.S.C. § 507(a)(2) or § 507(a)(5).

F.    Award an allowed administrative-expense priority claim under 11 U.S.C. § 503(b)(1)(A) for the reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6) and NY WARN Act, N.Y. Labor Law § 860-(g)(7); and

G.    Award such other relief as this Court deems just and proper.

Dated: September 30, 2015
       New York, New York

CARY KANE LLP

Larry Cary, Esq.
Liz Vladeck, Esq.
Christopher Baluzy, Esq.
1350 Broadway
Suite 1400
New York, New York 10018
(212) 871-0530