**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                             Chapter 11

FEDERATION EMPLOYMENT AND                      Case No. 15-71074 (REG)
GUIDANCE SERVICE, INC. d/b/a FEGS,[1]

                           Debtor.
------------------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF FEDERATION EMPLOYMENT AND GUIDANCE SERVICE, INC. D/B/A FEGS

The *Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Federation Employment and Guidance Service, Inc. d/b/a FEGS*, dated December 19, 2017 [Docket No. 976] (the "Plan"),[2] having been filed with this Court (the "Court") by Federation Employment and Guidance Service, Inc. d/b/a FEGS ("FEGS" or the "Debtor"); and, after due notice and a hearing, the Court having entered an order dated December 19, 2017 [Docket No. 978] (the "Disclosure Statement Approval Order"), pursuant to section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"): (i) approving the *Disclosure Statement on Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Federation Employment and Guidance Service, Inc. d/b/a FEGS*, dated December 19, 2017 [Docket No. 977] (the "Disclosure Statement"), (ii) scheduling a hearing on confirmation of the Plan (the "Confirmation Hearing"), and (iii) approving related procedures and relief; and a Solicitation Package having been transmitted to all holders of Claims in FEGS Class 4 (the "Voting Class"), and a Confirmation Hearing Notice or Non-Voting Notice having been sent to all other Holders of

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.
[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, Disclosure Statement, or the Disclosure Statement Approval Order.

Claims and other parties in interest, as required by the Disclosure Statement Approval Order; and the Plan Supplement [Docket No. 1010] (as it may be supplemented or otherwise further amended or modified, the "Plan Supplement") having been filed on January 9, 2018, as required by the Plan; and the Debtor having filed its *Memorandum of Law in Support of Confirmation of the Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Federation Employment and Guidance Service, Inc. d/b/a FEGS*, [Docket No. 1039] (the "Confirmation Memorandum") and the Affirmation of Judith Pincus, the Chief Wind Down Officer of the Debtor, in support of confirmation [Docket No. 1038] (the "Pincus Declaration"); and no objections having been filed in respect of Confirmation; and the Confirmation Hearing having been held before the Court on January 25, 2018 after due notice to holders of Claims and other parties in interest in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Eastern District of New York; and upon all of the proceedings held before the Court, and after full consideration of:  (i) the Confirmation Memorandum; (ii) the Pincus Declaration; (iii) the *Declaration of Catherine Nownes-Whitaker on Behalf of Rust Consulting/Omni Bankruptcy Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtor's Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* filed on January 23, 2018 [Docket No. 1037] (the "Voting Declaration"); and (iv) all other evidence adduced, memoranda and objections filed in connection with, and the proffers and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

It hereby is DETERMINED AND FOUND THAT:

A.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Court has jurisdiction over this Case pursuant to sections 157 and 1334 of Title 28 of the

United States Code.  Venue is proper pursuant to sections 1408 and 1409 of Title 28 of the United

States Code.  Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of

Title 28 of the United States Code.

B.    Judicial Notice.  The Court takes judicial notice of the docket of the Case

maintained by the Clerk of the Court, including, without limitation, all pleadings and other

documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence

proffered or adduced and all arguments made at the hearings held before the Court during the

pendency of this Case.

C.    Notice; Transmittal and Mailing of Materials.  Due, adequate, and sufficient notice

of the Disclosure Statement Approval Order, Disclosure Statement, the Plan and the Confirmation

Hearing, along with the deadlines for voting on and filing objections to the Plan, has been given

to all known holders of Claims against the Debtor in accordance with the procedures set forth in

the Disclosure Statement Approval Order, and no other or further notice is or shall be required;

D.    Voting.  Votes on the Plan were solicited after disclosure of "adequate information"

as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Voting Declaration, votes

to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent

with the Disclosure Statement Approval Order, the Bankruptcy Code, and the Bankruptcy Rules.

E.    Plan Supplement.  The filing of the Plan Supplement and notice of such documents

were good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the

Disclosure Statement Approval Order, and no other or further notice is or shall be required.

F.    Plan Modifications (11 U.S.C. § 1127).  Subsequent to solicitation, the Debtor made

certain non-material modifications to the Plan, which are reflected in this Confirmation Order (the

"Plan Modifications"), to reflect compromises of informal plan objections or other appropriate

clarifications as set forth on the record of the Confirmation Hearing.  None of the Plan Modifications made since the commencement of solicitation adversely or otherwise materially affects the treatment of any Claim against or Interest in the Debtor under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these Plan Modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.  The Plan as modified shall constitute the Plan submitted for confirmation to the Court.

G.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

H.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).  In addition to Administrative Claims, Priority Tax Claims, the DOL Priority Claim, Professional Fee Claims, and United States Trustee Fees, which need not be classified, the Plan classifies four Classes of Claims with resepect to the Debtor.  The Claims placed in each Class are substantially similar to other Claims, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, the classifications were not done for any improper purpose, and such Classes do not unfairly discriminate between or among holders of Claims.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

I.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Sections 3.2, 3.3, and 3.4 of the Plan specify, respectively, that Claims in FEGS Class 1 (DASNY/Bond Trustee Secured Claims), FEGS Class 2 (Other Secured Claims), and FEGS Class 3 (Other Priority Claims) are

Unimpaired by the Plan.  Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

   J.  <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Section 3.5 of the Plan designates FEGS Class 4 (Other Unsecured Claims) as Impaired, and Section 4.4 of the Plan specifies the treatment of this Class under the Plan.  Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

   K.  <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment by the Debtor for each Claim in each respective Class, unless the holder of a Claim has agreed to a less favorable treatment.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

   L.  <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides adequate and proper means for the Plan's implementation.  Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

   M.  <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Section 1123(a)(6) of the Bankruptcy Code does not apply because the Debtor is a not-for profit entity and has no securities.

   N.  <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The Plan provides for the appointment of, and identifies, (i) a Plan Administrator that will act for the Debtor in a fiduciary capacity as applicable to a board of directors and (ii) a Creditor Trustee to prosecute certain claims consistent with the interests of the Debtor, creditors and public policy; each of which is subject to the provisions of the Plan.  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

   O.  <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

P.      <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the entity submitting it as the Plan Proponent.  Accordingly, the Plan satisfies Bankruptcy Rule 3016(a).

Q.      <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtor, as the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code.

R.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Plan was proposed with the purpose of (a) liquidating the Debtor's assets, (b) distributing the proceeds generated by the liquidation of the Debtor's assets, and (c) winding up the Debtor's affairs so as to maximize recoveries to creditors and further the Debtor's charitable mission.

S.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to the approval of the Court as being reasonable.  Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

T.      <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The identities and affiliations of the persons proposed to serve as the Plan Administrator of the post Effective Date Debtor and as the Creditor Trustee of the Creditor Trust have been fully disclosed by the Debtor, are consistent with the interests of creditors, and are in accordance with public policy. Accordingly, section 1129(a)(5) of the Bankruptcy Code is satisfied.

U.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code does not apply in this Case because the Debtor will not operate a business after the Effective Date and the Plan does not provide for any changes to any regulated rates.

V.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Pincus Declaraton, the Voting Declaration and other evidence proffered or adduced at the Confirmation Hearing establish that each holder of an Impaired Claim either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

W.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  FEGS Classes 1, 2 and 3 are each Classes of Unimpaired Claims which are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  FEGS Class 4 has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.

X.      Treatment of Administrative, Priority Tax, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims pursuant to Section 2.2(c) of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Other Priortiy Claims pursuant to Section 4.3 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims and the DOL Priority Claim pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Y.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).   FEGS Class 4 is Impaired and has voted in favor of the Plan.   Thus there is at least one Class of Claims against the Debtor that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider.   Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

Z.      Feasibility (11 U.S.C. § 1129(a)(11)).   The statements and conclusions in the Pincus Declaraton, and other evidence proffered or adduced at the Confirmation Hearing regarding feasibility, including, without limitation, the agreements set forth on the record, ***including, without limitation, the agreement of the United Jewish Appeal – Federation of Jewish Philanthropies of New York, Inc. ("UJA") to limit the administrative expense priority asserted in its Proof of Claim No. 2348 to $3 million upon which agreement this Court relied in granting confirmation of the Debtor's Plan:***   (a) are persuasive and credible; (b) have not been controverted by other evidence; and (c) establish that the Debtor will have sufficient funds to administer and consummate the Plan and to close the Case.   Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

AA.      Payment of Fees (11 U.S.C. § 1129(a)(12)).   All outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 have been paid, or the Plan provides for the payment of all such fees on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.   The Plan further provides that the Debtor or Plan Administrator shall pay fees that accrue under 28 U.S.C. § 1930 until a final decree is entered in this Case, or the Court orders otherwise.   Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

4749221v.4

BB.    <u>11 U.S.C. §§ 1129(a)(13), (14), and (15) are Inapplicable</u>.  Sections 1129(a)(13), (14) and (15) of the Bankruptcy Code do not apply in this Case.

CC.    <u>Transfers of Property (11 U.S.C. § 1129 (a)(16))</u>.  As required by New York state law, the proposed transfer of all or substantially all of the Debtor's assets in accordance with the provisions of the Plan satisfy the requirements set forth in sections 510 and 511 of the New York Not-for-Profit Corporation Law.  Accordingly, the Plan satisifes section 1129(a)(16) of the Bankruptcy Code.

DD.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

EE.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in this Case, the exculpated parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and the exculpated parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 13.3 of the Plan.

FF.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VII of the Plan.

HH.    <u>Conditions to Confirmation</u>.  The conditions to Confirmation set forth in Section 10.1 of the Plan have been satisfied, waived, or will be satisfied by entry of this Confirmation Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    <u>Confirmation</u>.  The Plan, a copy of which is attached hereto as <u>Exhibit A</u>, together with the Plan Supplement and the Plan Modifications contained herein, is approved and confirmed under section 1129 of the Bankruptcy Code.

2.    <u>Objections</u>.  Any objections to the Plan or to Confirmation of the Plan that have not been withdrawn, waived or settled, and all reservations of rights pertaining to Confirmation of the Plan, are overruled on the merits.

3.    <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4.    <u>Implementation of the Plan</u>.  Judith Pincus is hereby appointed as the Plan Administrator.  The Plan Administrator shall have the powers and obligations, and shall be compensated, as set forth in Section 5.11 of the Plan and the Plan Supplement and is authorized to implement the Plan in a manner consistent with the terms and conditions set forth in the Plan and this Confirmation Order.  The powers and obligations of the Plan Administrator set forth in Section 5.11 of the Plan may be modified and/or amended without further order of the Court by agreement between the Plan Administrator and the Oversight Committee. The Plan Administrator shall have no liability in connection with this Case, except for the Plan Administrator's gross negligence or willful misconduct.  No person or entity may commence an action against the Plan Administrator

in connection with this Case without first obtaining entry of an Order of the Court on notice to the Plan Administrator.

5.      <u>Vesting of Assets in the Debtor</u>.  Except as expressly provided otherwise in the Plan, on the Effective Date, all Assets shall vest in the Debtor or the Creditor Trust, as the case may be, free and clear of all Claims, liens, encumbrances, charges, interests and other rights and interests of Creditors arising on or before the Effective Date, but subject to the terms and conditions of the Plan and this Confirmation Order.

6.      <u>Continuing Existence</u>.  From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, any remaining Assets as expeditiously as reasonably possible, (iii) enforcing and prosecuting Causes of Action, interests, rights and privileges of the Debtor not otherwise transferred to the Creditor Trust, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns and (vii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan and the wind down of its affairs.

7.      <u>Sale of the Program Properties</u>. The Debtor, and/or the Plan Administrator, as applicable, is hereby authorized to take any and all actions necessary to consummate the private sale of the Program Properties to the Providers in accordance with the terms of the Purchase Agreement pursuant to sections 363, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141, 1145 and 1146(a) of the Bankruptcy Code and sections 510 and 511 of the New York Not-For-Profit Corporation Law, free and clear of all Liens, Claims, interests or encumbrances except as otherwise set forth in the Purchase Agreement.

8.    <u>The Settlement Agreement</u>. The Settlement Agreement is hereby approved and the Debtor, and/or the Plan Administrator, as applicable, is authorized to enter into and take all actions necessary to effectuate the Settlement Agreement.

9.    <u>Sale of Housing Corporation Interests</u>. The Debtor, and/or the Plan Administrator, as applicable, is hereby authorized to take any and all actions necessary to consummate the private sale of the Housing Corporation Interests, in one or more transactions, to the Joint Venture or such other party as may be designated by the Debtor, and/or the Plan Administrator, as applicable, in accordance with, or on substantially the same terms and conditions as contained in, the Substitution Agreements pursuant to sections 363, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141, 1145 and 1146(a) of the Bankruptcy Code and sections 510 and 511 of the New York Not-For-Profit Corporation Law, free and clear of all Liens, Claims, interests or encumbrances except as otherwise set forth in the Substitution Agreements.  The Stipulation and Agreement Providing for Waiver of Potential Claims by Pension Benefit Gruarnty Corporation ("<u>PBGC</u>") and UJA Retirment Plan Against Housing Corporations and Purchasers of the Housing Corporation Interests [Docket No. 1042], is hereby approved and the Debtor, and/or the Plan Administrator, as applicable, is authorized to enter into and take all actions necessary to effectuate the same.

10.    <u>The Other Sales</u>. The Debtor, and/or the Plan Administrator, as applicable, is hereby authorized to consummate, and to take any and all actions necessary to consummate, one or more sales of the Other Properties under sections 365, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141, 1145 and 1146(a) of the Bankruptcy Code under the terms and conditions of one or more purchase and sale agreements.  Such sales shall be on such terms and conditions as determined by the Debtor and the Committee or the Plan Administrator and the Oversight Committee as the case may be.

12

11.     <u>Management of Debtor</u>.  On the Effective Date, the members of the Debtor's board of trustees shall be deemed to have resigned therefrom, and shall be relieved of all further responsibilities, with the operation of the Debtor becoming the responsibility of the Plan Administrator in accordance with the Plan.

12.     <u>Oversight Committee</u>.  On the Effective Date, the Committee shall continue as the Oversight Committee with such rights, authority and obligations as set forth in the Plan.

13.     <u>Rights of Action</u>.  In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Plan Administrator and/or the Creditor Trust, as the case may be, may pursue all reserved rights of action, including, without limitation, Causes of Action of the Debtor.  Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Plan Administrator, on behalf of the post Effective Date Estate and/or the Creditor Trustee, on behalf of the Creditor Trust, as the case may be, to pursue and prosecute any Causes of Action including, without limitation, any Creditor Trust Claims.  Except as otherwise set forth in the Plan, all Causes of Action of the Debtor shall survive confirmation of the Plan and the commencement and prosecution of Causes of Action of the Debtor shall not be barred or limited by res judicata or any estoppel, whether judicial, equitable or otherwise.  If the Plan Administrator does not prosecute a Retained Cause of Action of the Debtor, the Creditor Trust shall, upon the consent of the Plan Administrator, be authorized and have standing to prosecute such Cause of Action on behalf of the Debtor.  If the Plan Administrator does not consent to the Creditor Trust's prosecution of a Cause of Action of the Debtor, the Creditor Trust may seek authority and standing from the Court to prosecute such Cause of Action, and all rights of the Plan Administrator to object or otherwise oppose such relief are reserved.

14.   <u>Creditor Trustee</u>.   Robert N. Michaelson, Esq. is hereby appointed as the Creditor Trustee.   The Creditor Trustee shall have the powers and obligations, and shall be compensated, as set forth in Article IX of the Plan and the Creditor Trust Agreement.   The Creditor Trustee shall, and is authorized to, take such actions as may be necessary to implement the Creditor Trust and the terms of the Creditor Trust Agreement.   The Creditor Trustee shall have the absolute right to pursue or not to pursue any and all Creditor Trust Assets and or Creditor Trust Claims as it determines is in the best interests of the beneficiaries of the Creditor Trust, and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence.   No person or entity may commence an action against the Creditor Trustee in connection with this Case without first obtaining entry of an Order of the Court on notice to the Creditor Trustee.

15.   <u>Creditor Trust Arrangements</u>.   On the Effective Date, the Plan Administrator, the Oversight Committee and the Creditor Trustee will enter into the Creditor Trust Agreement pursuant to which the Creditor Trust Funds will be advanced to the Creditor Trust and the Creditor Trustee shall take such actions as may be necessary to implement the Creditor Trust and the terms of the Creditor Trust Agreement.   To the extent provided in section 1145 of the Bankruptcy Code and under applicable nonbankruptcy law, the issuance under the Plan of the Creditor Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and the Investment Company Act of 1940, as amended, pursuant to section 7(a) and 7(b) of that Act, and all rules and regulations promulgated under any of the foregoing.

16.   <u>Creditor Trust</u>.   The Plan Administrator shall transfer to the Creditor Trust all of the estate's right, title, and interest in the Creditor Trust Assets, including any Creditor Trust Claims being prosecuted by the Creditors' Committee on behalf of the Debtor's estate prior to the

4749221v.4

Effective Date.  The Creditor Trust shall also be responsible for, and respond on behalf of the Debtor to, the subpoenas and requests for production of documents in connection with Creditor Trust Claims.  The Plan Administrator shall provide reasonable cooperation in the response to any such requests for the production of documents.  Any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the above-described rights and Creditor Trust Claims shall be transferred to the Creditor Trust and shall vest in the Creditor Trustee and its representatives.  The Plan Administrator, the Creditor Trustee and the Oversight Committee are authorized to take all necessary actions to effectuate the transfer of such privileges.  Notwithstanding any agreement or order entered by the Bankruptcy Court to the contrary, the Creditors' Committee or the Oversight Committee, as the case may be, shall share any discovery obtained prior to and after the Effective Date with the Creditor Trustee.  The Creditor Trustee's receipt of transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtor's Estate.  Nothing herein shall be construed to deem any documents or information of the Debtor to be in the custody and control of the Creditor Trustee.

17.    Corporate Action.    On the Effective Date, the appointment of the Plan Administrator, and any and all other matters provided for under the Plan involving corporate action by the Debtor, its directors or its trustees, including, without limitation, the transfer of management responsibilities of the Debtor to the Plan Administrator, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable law, without any requirement of further action by the Debtor's directors, officers or trustees or any filings with any governmental authority.  Upon the distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Court (which may be included in the

application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Debtor and/or the Plan Administrator on behalf of the Debtor may take appropriate action to dissolve under applicable law. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business.

18.    <u>Cancellation of Existing Instruments and Agreements</u>.    On the Effective Date, except as otherwise provided herein, all instruments and agreements governing any Claim against the Debtor shall be deemed cancelled and terminated, and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed released and/or satisfied as to the Debtor.

19.    <u>Full and Final Satisfaction</u>.    All payments and all distributions under the Plan shall be in full and final satisfaction, settlement and release of all the Debtor's obligations with respect to Claims against the Debtor, except as otherwise provided in the Plan.

20.    <u>Setoffs</u>.    The Plan Administrator may, pursuant to and to the extent permitted by applicable law, setoff against any Claim asserted against the Debtor and/or the Assets, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that that Debtor or the Estate may have against the holder of such Claim, provided that neither the failure to effect a setoff, nor the allowance of any Claim against the Debtor hereunder, shall constitute a waiver or release of any such Claim the Debtor or the Estate may have against such holder.

21.     <u>Abandoned Estate Assets</u>.  Upon the election of the Plan Administrator, with the approval of the Oversight Committee, the Plan Administrator may abandon any Assets without the need for additional approval of the Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate.

22.     <u>Indefeasibility of Distributions</u>.  All distributions provided for under the Plan shall be indefeasible.

23.     <u>Distribution of Unclaimed Property</u>.  Any distribution of property (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such distribution (collectively, the "<u>Unclaimed Property</u>") shall irrevocably revert to the Estate for re-distribution in accordance with the Plan.

24.     <u>Final Order</u>.  Any requirement in the Plan for a Final Order may be waived by the Plan Proponent.

25.     <u>Approval of Assumption or Rejection of Executory Contracts</u>.  Entry of this Confirmation Order by the Clerk of the Court, but subject to the condition that the Effective Date occur, shall constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or assumption and assignment of the Executory Contracts, if any, assumed or assumed and assigned pursuant to Section 7.1 of the Plan, and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts rejected pursuant to Section 7.1 of the Plan.

26.     <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Plan</u>.  Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than forty-five (45) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract

which Order may be this Confirmation Order, and (b) notice of occurrence of the Effective Date. Any such Claims not filed within such time shall be forever barred from assertion against the Debtor and any and all of its properties and Assets.

27.     Compensation and Benefit Programs.  To the extent not previously terminated, and except as set forth in a schedule in the Plan Supplement, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its current employees or officers as in effect on the Confirmation Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Confirmation Date.

28.     Non-Material Modifications of the Plan:

(a)     Section 13.2(a) of the Plan is hereby amended to include the following sentence at the end thereof:

> For the avoidance of doubt, nothing contained in this Section 13.2(a) shall be construed in any manner to constitute a release of any claims the New York State Attorney General may have against any of the Debtor Release Parties, including claims by the Attorney General pursuant to Section 112(a)(7) of the Not-For-Profit Corporation Law.

(b)     A new Section 13.8 is hereby added to the Plan as follows:

> Section 13.8.   Except as provided in Section 13.3 of the Plan ("Exculpation") as qualified below, nothing otherwise contained in Article 13 of this Plan shall enjoin or preclude Loeb & Troper from commencing, conducting, or continuing any claims (including but not limited to cross-claims and counterclaims) suits, causes of action, or other proceedings of any kind (including but not limited to the taking of evidence) existing in its own name and right, or asserting any defenses or set-off rights, in response to any claim against Loeb & Troper or cause of action asserted against Loeb & Troper in the pending adversary proceeding commenced by the Committee against Loeb & Troper [Adv. No. 8-17-08100], or in any other action or proceeding brought against Loeb & Troper relating

18

in any way to the Debtor or the work Loeb & Troper performed for the Debtor, provided, however, that any such action against the Debtor or the Creditor Trust shall only be for purposes of asserting defenses or set-off rights and not to assert affirmative claims against the Debtor or the Creditor Trust.  For purposes of this Section 13.8, the reference in Section 13.3 to "any act or omission in connection with, related to, or arising out of the Case", shall refer to the deliberations regarding, and the decision to, commence the Case and any acts or omissions in connection with the preparation and administration of the Case, but shall exclude any acts or omissions that caused any of the underlying conditions that led to the filing of the Case.

(c)    A new definition for Loeb & Troper is hereby added to the Plan as follows:

"Loeb & Troper" means mean Loeb & Troper LLP, a New York limited liability partnership, and its partners, officers and employees.

29.    <u>Clarification Regarding Pension Plan</u>:  No provision contained in the Disclosure Statement, the Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code, shall be construed as discharging, releasing, or relieving the Debtor, or any party, in any capacity, from any liability resulting from a fiduciary breach with respect to the *Retirement Plan for Employees of United Jewish Appeal-Federation of Jewish Philanthropies of New York, Inc. and Affiliated Agencies and Institutions* (the "<u>Pension Plan</u>") under any law or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability resulting from a fiduciary breach against any party as a result of the Plan's provisions for satisfaction, release, and discharge of claims.

30.    <u>Clarification Regarding Restricted Funds</u>:

(a)    The Debtor acknowledges that it currently maintains approximately $9.5 million of funds designated on its books and records as donor-restricted (the "<u>Restricted Funds</u>"). Following the Effective Date, the Restricted Funds shall continue to be maintained and segregated by the Plan Administrator, and no portion thereof shall constitute Estate assets or be distributed to

Creditors absent further order of the Bankruptcy Court or an agreement between the Plan Administrator and the Oversight Committee; provided, however, that Confirmed Restricted Funds (as defined below) may only be distributed in the manner described in subparagraph 30(b) below.

(b)     After the Effective Date, the Plan Administrator shall (i) continue to review the documentation for each donation underlying or otherwise relating to the Restricted Funds and, together with the Oversight Committee, make a determination as to what portion of the Restricted Funds are subject under applicable law to a donor restriction (the "Confirmed Restricted Funds"), (ii) to the extent feasible, contact each donor of the Confirmed Restricted Funds to determine whether such donor has or proposes a preferred designee of its respective Confirmed Restricted Funds, (iii) in cases in which the donor of the Confirmed Restricted  Funds is deceased or cannot reasonably be identified or located, identify a potential recipient for such Confirmed Restricted Funds, (iv) present to the New York State Attorney General (the "NYSAG") an omnibus proposal for the disposition of the Confirmed Restricted Funds consistent with the foregoing (the "Proposed Restricted Funds Disposition"), (v) commence a *cy pres* proceeding (the "*Cy Pres* Proceeding") and seek court approval for the Proposed Restricted Funds Disposition, and (vi) effectuate the disposition of Restricted Funds in the manner approved by the NYSAG and the court presiding over the Cy Pres Proceeding.  Unless the Bankruptcy Court extends such deadline, the Proposed Restricted Funds Disposition shall be presented to the NYSAG within 180 days from the Effective Date.

31.     Clarification Regarding Deferred Compensation Account:     Notwithstanding anything contained in this Order to the contrary, the provisions of paragraph 9 of the *Final Order Authorizing Continued Use of the Debtor' s (I) Cash Management System; (II) Bank Accounts; and (III) Business Forms; and Extending the Time Within Which to Comply with Section 345*

*Investment and Deposit Requirements* entered by the Court on April 23, 2015 [Docket No. 175] (the "Cash Management Order"), shall remain in full force and effect until either an agreement between the parties subject to the consent of the Oversight Committee or entry of a final non-appealable order entered by this Court or such other court of competent jurisdiction determining the rights to the Magaliff Deferred Compensation Accounts (as defined in the Cash Management Order) or any entitlement to the proceeds thereof. Each of the Debtor, the Plan Administrator, the Creditor Trustee and Gail Magaliff expressly reserve and retain all rights, claims and defenses with respect to the Magaliff Deferred Compensation Accounts and any litigation or claims with respect thereto.

32.    Further Modification of Plan:  After the Confirmation Date, but prior to substantial consummation of the Plan, the Plan Proponent, in consultation with the Committee, may, so long as the treatment of Holders of Claims against the Debtor under the Plan is not adversely affected, institute proceedings in Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or as the Court shall otherwise order.

33.    Revocation or Withdrawal of Plan.  The Plan Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Plan Proponent revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

34.    <u>Retention of Jurisdiction</u>.    Following the Effective Date, the Court will retain exclusive jurisdiction of the Case for the purposes set forth in Section 12.1 of the Plan.  Following the Effective Date, the Court will retain non-exclusive jurisdiction of the Case for the purposes set forth in Section 12.2 of the Plan.  If the Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Case, including with respect to the matters set forth in Article XII of the Plan, Article XII of the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

35.    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan including, without limitation, the treatment of Claims against in the Debtor, the entry of this Confirmation Order shall, provided that the Effective Date shall have occurred, operate to enjoin permanently all Persons that have held, currently hold or may hold a Claim against or Interest in the Debtor, from taking any of the following actions against the Debtor, the Plan Administrator, the Creditor Trustee, the Committee or members thereof, the Oversight Committee or members thereof, present and former directors, officers, trustees, agents, attorneys, accountants, advisors, members or employees of the Debtor, the Committee or members thereof, the Oversight Committee or members thereof, the Creditor Trustee or the Plan Administrator, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim against or Interest in the Debtor: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to a Claim against or Interest in the Debtor; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim against or Interest in the Debtor; (c) creating, perfecting or enforcing in any manner, directly or indirectly,

4749221v.4

any lien or encumbrance of any kind with respect to a Claim against or Interest in the Debtor; (d) other than as permitted by Section 553 of the Bankruptcy Code, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any Debt, liability or obligation due to the Debtor or its property or Assets with respect to a Claim against or Interest in the Debtor; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with or is inconsistent with the provisions of the Plan;  provided, however, nothing in Section 13.1 of the Plan shall preclude the holder of a Claim against the Debtor from pursuing any applicable insurance after the Effective Date, from seeking discovery in actions against third parties or from pursuing third-party insurance that does not cover Claims against the Debtor; provided further, however, nothing in Section 13.1 of the Plan shall limit the rights of a holder of an Allowed Claim against the Debtor to enforce the terms of the Plan.  Notwithstanding anything to the contrary hereinabove set forth, nothing contained herein shall enjoin any such Person from taking any such actions against any Excluded Former Officer or Loeb and Troper, the former accountants to the Debtor.

36.    <u>Releases by the Debtor</u>.  To the greatest extent permissible by law, and except as otherwise specifically provided in Section 13.2(a) of the Plan or this Confirmation Order, as of the Effective Date, the Releases by the Debtor, as set forth in Section 13.2(a) of the Plan, are hereby approved.

37.    <u>Releases Pursuant to Settlement Agreement</u>.  To the greatest extent permissible by law, and except as otherwise specifically provided in Section 13.2(b) of the Plan or this Confirmation Order, as of the Effective Date, the Releases Pursuant to the Settlement Agreement, as set forth in Section 13.2(b) of the Plan, are hereby approved.

38.    <u>Exculpation</u>.   The exculpation provision set forth in Section 13.3 of the Plan is hereby approved.

39.    <u>Indemnification</u>.  The indemnification provision set forth in Section 13.4 of the Plan is hereby approved.

40.    <u>Release of Collateral</u>.   Except as expressly provided otherwise in the Plan, the Purchase Agreement or the Settlement Agreement, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan:  (i) each holder of;  (A) an Allowed Secured Claim;  and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim;  and (y) execute such documents and instruments as the Plan Administrator requires to evidence such claimant's release of such property;  and (ii) on the Effective Date, all claims, rights, title and interest in such property shall revert to the Debtor, free and clear of all Claims against the Debtor, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind.   No Distribution hereunder shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Plan Administrator such release of liens.  Any such holder that fails to execute and deliver such release of liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder.   Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of liens until the time such Claim is Allowed or Disallowed.

41.    <u>Cause of Action Injunction</u>.  On and after the Effective Date, all Persons other than the Plan Administrator and, to the extent applicable pursuant to the Plan and the Creditor Trust Agreement, the Creditor Trust and the Creditor Trustee, will be permanently enjoined from

commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any, claim, debt, right or Cause of Action that the Plan Administrator, or to the extent applicable, the Creditor Trust and the Creditor Trustee, retains authority to pursue in accordance with the Plan and, to the extent applicable, the Creditor Trust Agreement.

42.     Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Plan Administrator shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Persons entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable the Plan Administrator to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  Any person that fails to comply with the Plan Administrators requests in the preceding sentence within ninety (90) days of any such request thereof, shall not be entitled to participate in any distribution under the Plan and no such distribution shall be made on account of any such persons Allowed Claim, and the Plan Administrator shall reallocate such distribution for the benefit of all other holders of Allowed Claims in accordance with the Plan.

43.     Section 1146 Exemption.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the

Plan; or the vesting, transfer, or sale of any real property of the Debtor pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

44. <u>Severability</u>. In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.

45. <u>Binding Effect; Counterparts</u>. The provisions of the Plan shall bind all holders of Claims against the Debtor, whether or not they have accepted the Plan. The Plan may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Plan.

46. <u>Effectuating Documents; Further Transaction</u>. The Debtor, the Plan Administrator, and/or the Creditor Trustee (as the case may be) are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

47. <u>Approval of Consents</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents,

4749221v.4

instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any related documents, instruments or agreements, and any amendments or modifications thereto.

48.     <u>Post Effective Date Services</u>.  The fees and expenses of professionals retained by the Plan Administrator and the Oversight Committee on and after the Effective Date, shall be paid by the Plan Administrator from Remaining Cash and Net Proceeds upon receipt of invoice(s) therefor, or on such other terms as the Plan Administrator and the applicable professional may agree to, without the need for further Court authorization, but subject to the approval of the Oversight Committee, which approval shall not unreasonably be withheld.   If the Plan Administrator and the professional cannot agree on the amount of post Effective Date fees and expenses to be paid to such professional, such amount shall be determined by the Court.

49.     <u>Supplemental Administrative Claims Bar Date</u>.  Except as otherwise provided in the Plan, for (1) Professional Persons requesting compensation or reimbursement for Professional Fee Claims, and (2) U.S. Trustee Fees, requests for payment of Administrative Claims, for which a Bar Date to file such Administrative Claim was not previously established, must be filed no later than forty-five (45) days after the occurrence of the Effective Date, or such later date as may be established by Order of the Court.  Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

50.  <u>Professional Fee Claims Bar Date</u>.  All final applications for payment of Professional Fee Claims for the period through and including the Effective Date shall be filed with the Court and served on the Plan Administrator and the other parties entitled to notice pursuant to the Interim Compensation and Reimbursement Procedures Order [Docket No. 69] on or before the Professional Fee Claims Bar Date, or such later date as may be agreed to by the Plan Administrator. Any Professional Fee Claim that is not asserted in accordance with Section 2.4(a) of the Plan shall be deemed Disallowed under the Plan and the holder thereof shall be enjoined from commencing or continuing any claim to collect, offset, recoup or recover such Claim against the Estate or any of its Assets or property.

51.  <u>Notice of Entry of Confirmation Order and Effective Date</u>.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtor shall file and serve notice of entry of this Confirmation Order (the "<u>Notice of Confirmation</u>") and notice of the occurrence of the Effective Date and notice of the Supplemental Administrative Claims Bar Date ("<u>Notice of the Effective Date</u>") on all holders of Claims against the Debtor, the United States Trustee for the Eastern District of New York and other parties in interest by causing the Notice of Confirmation and the Notice of Effective Date to be delivered to such parties by first-class mail, postage prepaid, within ten business days after the Effective Date.  The Notice of Confirmation and Notice of the Effective Date shall also be posted on the Debtor's restructuring website at <u>http://www.omnimgt.com/FEGS</u>. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

52.  <u>Substantial Consummation</u>.  Upon the occurrence of the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

53.    <u>Findings of Fact</u>.  The determinations, findings, judgments, decrees, and orders set forth and incorporated herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

54.    <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

55.    <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

56.    <u>Order Effective Immediately</u>.  Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall be immediately effective as of the entry hereof and the Debtor is authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions to the Effective Date set forth in Section 10.2 of the Plan.

**Dated: Central Islip, New York**
**February 6, 2018**

_Robert E. Grossman_
**Robert E. Grossman**
**United States Bankruptcy Judge**

4749221v.4