ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 704-9600
Facsimile: (917) 261-5864
Shawn P. Naunton
*Attorneys for Ira Machowsky*

KRAUSS PLLC
41 Madison Avenue, Suite 4102
New York, New York 10010
Telephone: (914) 949-9100
Facsimile: (914) 949-9109
Geri S. Krauss
*-and-*
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
565 Fifth Avenue
New York, New York 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
Richard F. Albert
*Attorneys for Gail Magaliff*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:

FEDERATION EMPLOYMENT AND	Chapter 11
GUIDANCE SERVICE, INC. d/b/a/ FEGS[1],	Case No. 15-71074 (REG)

        Debtor.
-------------------------------------------------------------------x

**MOTION OF FORMER OFFICERS IRA MACHOWSKY AND GAIL MAGALIFF
FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY,
TO THE EXTENT APPLICABLE,
TO AUTHORIZE THE ADVANCEMENT AND PAYMENT OF COSTS AND FEES
<u>UNDER DIRECTORS AND OFFICERS INSURANCE POLICY</u>**

Ira Machowsky and Gail Magaliff (the "**Movants**"), former officers of Federation

Employment and Guidance Service, Inc. d/b/a FEGS, ("**FEGS**" or the "**Debtor**"), the debtor

---

[1] The last four digits of the Debtor's federal tax identification number are 4000.

1

in the above-captioned case, hereby move this court, pursuant to section 362(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York, for entry of an order substantially in the form attached hereto modifying the automatic stay of section 362(a) of the Bankruptcy Code, to the extent such stay applies, to permit National Union Fire Insurance Company of Pittsburgh, PA ("**National Union**") to advance and/or reimburse defense costs under and in accordance with the terms of the *Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Not-For-Profit Organizations* insurance policy No. 01-357-64-58 (the "**D&O Policy**") to or for the benefit of the Movants, for the reimbursement and payment of their defense, settlement, and other costs and fees incurred in connection with the Bankruptcy Claims (as defined below).[2] In support of this Motion, the Movants respectfully represent as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory and legal predicates for the relief sought herein are sections

---

[2] Previously, the Court entered an Order [Docket No. 596] modifying the Automatic Stay to permit National Union to pay the expenses, up to an applicable sublimit of $250,000, incurred by various covered individuals, including the Movants, in connection with investigations seeking to determine, among other things, the underlying cause or causes of the Debtor's financial demise. The prior Order was in reference to a separate form of coverage from that at issue in this application. Investigations have been conducted by the New York Attorney General's Office, Charities Bureau; the New York Attorney General's Office, Public Integrity Bureau; the New York County District Attorney's Office; and the United States Attorney's Office. The investigations by the New York Attorney General's Office are ongoing.

105(a), 362 (d)(1), and 541 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1.

## RELIEF REQUESTED

3. The Movants seek entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to permit payments and/or advancements by National Union that are, or will become, owing to the Movants in accordance with the terms of the D&O Policy for the reimbursement and payment of their defense, settlement, and other costs and fees incurred in connection with the Bankruptcy Claims (as defined below).

4. Nothing in this Motion is intended to modify or alter the rights and obligations provided for under the terms and conditions of the D&O Policy, and all parties to the D&O Policy retain and reserve all rights and defenses that they would otherwise have under the D&O Policy.

## BACKGROUND

5. On March 18, 2015, the Debtor filed a voluntary petition for reorganization under the provisions of the Bankruptcy Code [Docket No. 1]. The Debtor continued in possession of its property and continued to operate and manage its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 31, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of FEGS (the "**Committee**") [Docket No. 105].

6. On February 6, 2018, the Court entered its Order confirming the Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Federation Employment and Guidance Service, Inc. d/b/a FEGS (the "**Plan**") [Docket No. 1050]. The

Effective Date (as defined in the Plan) of the Plan occurred on March 1, 2018.

7. As of the Effective Date, the Creditor Trust was established and Robert N. Michaelson was appointed as Creditor Trustee. He continues to serve in that capacity.

8. Previously, the Committee was granted standing and was authorized to commence certain actions against the Movants on behalf of FEGS's bankruptcy estate pursuant to the Stipulation and Order Authorizing Official Committee of Unsecured Creditors to Prosecute Certain Claims on Behalf of the Estate. As of the Effective Date, the Creditor Trustee succeeded to the rights of the Committee and the Debtor regarding the right to bring claims against the Movants.

## THE BANKRUPTCY CLAIMS

9. On March 15, 2017, the Committee and the Movants entered into a tolling agreement (the "**Tolling Agreement**") that extended the time by which the Committee must pursue certain alleged claims against the Movants arising from or relating to the FEGS bankruptcy. Subsequently, on November 13, 2017, the Committee sent a demand letter (the "**Demand Letter**") to the Movants, describing proposed causes of action related to negligence and breaches of fiduciary duty against Movants and demanding payment of substantial purported damages. The Tolling Agreement has been extended several times and remains in effect as between the Movants, on the one hand, and Robert N. Michaelson, in his capacity as Creditor Trustee of the Creditor Trust, on the other hand. We refer to the Tolling Agreement and the Demand Letter collectively herein as the "Bankruptcy Claims".

## THE INSURANCE POLICY

10. Prior to the commencement of the Bankruptcy Claims, the Debtor purchased the D&O Policy for the benefit of the Debtor and its directors, officers, executives, and employees.

11.     The Movants are former officers of FEGS. Ms. Magaliff served as the Chief Executive Officer of FEGS; Mr. Machowsky served as FEGS's Executive Vice President.

12.     "Coverage A" of the D&O Policy provides direct coverage to the Movants, who are directors and officers of the Debtor:

> This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period … for any actual or alleged Wrongful Act of such Individual Insured, except when and to the extent that the Organization has indemnified the Individual Insured. The insurer shall … advance Defense costs of such Claim prior to its final disposition.

13.     The D&O Policy is a "wasting liability policy," meaning that it insures against defense costs, but the payment of those costs erodes the policy's limits. The shared limit of liability for the D&O Policy is $15 million.

14.     National Union has indicated that before it will reimburse the Movants under the D&O Policy for fees and costs associated with the Bankruptcy Claims, it requires an order of the Court authorizing such reimbursement. Similarly, National Union has agreed to advance the Movants' defense costs related to the Bankruptcy Claims going forward, subject to its reservation of rights and entry of an order authorizing National Union to do so.

15.     The Movants do not believe that the automatic stay should prevent National Union from reimbursing the Movants or making payments to or for the benefit of the Movants under the D&O Policy. Nevertheless, to provide the parties with the requisite comfort on this issue, the Movants seek entry of an order modifying the automatic stay and permitting National Union to: (a) reimburse the Movants for costs and fees in connection with the Bankruptcy Claims; and (b) make payments to or for the benefit of the Movants going forward in accordance with the terms of the D&O Policy in connection with the Bankruptcy Claims. Absent such an

order, the Movants would be faced with having to personally advance their own defense costs, denying them a vital benefit to which they are entitled under the D&O Policy and causing immediate and irreparable harm.

## BASIS FOR RELIEF

### A. The D&O Policy's Proceeds are Not Property of the Estate.

16.     Generally, a debtor's liability insurance policy is property of the bankruptcy estate. *See* 11 U.S.C. § 541(a). However, the determination of whether proceeds of a liability insurance policy are property of the estate requires a fact-based analysis of the language and scope of the policy at issue. *See, e.g., In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) (explaining that the outcome of such a determination usually hinges on who the named insured under the liability insurance policy is). Courts have previously held that, even where directors and officers liability policies are themselves the property of a bankruptcy estate, the proceeds of those policies are not part of the bankrupt estate and therefore are not subject to the automatic stay. *In re Adelphia Comm. Corp.*, 298 B.R. 49 (S.D.N.Y. 2003). The rationale for Judge Baer's holding in *Adelphia* was that the debtor had no legal or equitable property interest over the proceeds of the D&O policy and there were no "unusual circumstances" that would result in adversity. *Id.* at 53-54.

17.     Here, Coverage A of the D&O Policy provides direct coverage only to the Movants. The Debtor is not a party to the Bankruptcy Claims, and therefore, the estate bears no independent liability in connection with the Bankruptcy Claims.  Moreover, the Debtor cannot offer indemnification payments to the Movants because it filed for bankruptcy protection. Accordingly, the D&O Policy proceeds are not property of the Debtor's estate and the automatic stay does not apply. *See* 11 U.S.C. § 362(a)(3); *Adelphia*, 298 B.R. at 53-54.

### B.    <u>The Automatic Stay Should Be Modified to the Extent Applicable.</u>

18.    To the extent that the automatic stay applies, cause exists to grant limited relief from the automatic stay to permit National Union to pay defense costs associated with the Bankruptcy Claims because of the effect of the stay on the parties, the balance of the harms, and the interests of judicial economy weigh in favor of lifting the stay.

19.    Section 362(d)(1) of the Bankruptcy Code allows the Court to modify the automatic stay "for cause." 11 U.S.C. § 362(d)(1). While "cause" is not defined in the Bankruptcy Code, courts have held that it "is a broad and flexible concept that must be determined on a case-by-case basis." *In re MF Global Holdings Ltd.*, 469 B.R. 177, 191 (Bankr. S.D.N.Y. 2012). The Movants submit that cause exists to modify the Automatic Stay, to the extent applicable in this case.

20.    Given the scope and complex nature of the myriad issues related to FEGS's bankruptcy and the related Bankruptcy Claims, it is apparent that the Movants should continue to be represented by competent counsel. The costs associated with such representation are too much for the Movants to bear. Absent such an order, the Movants may incur personal responsibility for their defense costs, which could impede their ability to conduct a meaningful defense.

21.    Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's current and former directors, officers and employees, even where such advances may ultimately reduce the total funds available directly to cover the debtor. *See, e.g., In re MF Global Holdings Ltd.,* 469 B.R. at 192; *see also In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010) (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs); *In re Enron Corp.*, No. 01-16034, 2002 WL

1008240 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy).

## NOTICE

22.     Notice of this Motion will be given to: (i) the U.S. Trustee; (ii) counsel to the Debtor; (iii) counsel to the Committee; (iv) counsel to the Creditor Trustee; (v) National Union, or its counsel; (vi) all parties entitled to notice pursuant to the Case Management Order entered by the Court on April 17, 2015 [Docket No. 160]. The Movants submit that, under the circumstances, no other or further notice is required.

## PRIOR REQUEST FOR RELIEF

23.     On January 19, 2016, the Court entered an Order [Docket No. 596] modifying the Automatic Stay to permit National Union to pay the expenses, up to an applicable sublimit of $250,000, incurred by various covered individuals, including the Movants, in connection with investigations seeking to determine, among other things, the underlying cause or causes of the Debtor's financial demise. Investigations have been conducted by the New York Attorney General's Office, Charities Bureau; the New York Attorney General's Office, Public Integrity Bureau; the New York County District Attorney's Office; and the United States Attorney's Office. The investigations by the New York Attorney General's Office are ongoing.

WHEREFORE, for the reasons set forth herein, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 27, 2018

        ZUCKERMAN SPAEDER LLP

        */s/ Shawn P. Naunton*
        Shawn P. Naunton
        485 Madison Avenue, 10th Floor
        New York, New York 10022
        Tel: (212) 704-9600
        Fax: (917) 261-5864
        snaunton@zuckerman.com
        *Attorneys for Ira Machowsky*

        -and-

        KRAUSS PLLC

        */s/ Geri S. Krauss*
        41 Madison Avenue, Suite 4102
        New York, New York 10010
        Telephone: (914) 949-9100
        Facsimile: (914) 949-9109
        gsk@kraussny.com

        MORVILLO ABRAMOWITZ GRAND
        IASON & ANELLO PC
        Richard F. Albert
        565 Fifth Avenue
        New York, New York 10017
        Tel: (212) 856-9600
        Fax: (212) 856-9494
        ralbert@maglaw.com
        *Attorneys for Gail Magaliff*